## Glens Falls Insurance Co.
### v.
## R. S. Hopkins et al.

1. Insurance—Agency—Verbal contract.—An agent can not bind his principal in a contract with himself. Where appellees were partners and both interested in the alleged verbal contract by which one partner instructed the other, who was an agent for the insurance company, to renew the policy of insurance on their store, and the latter said it would be all right, but nothing was done toward the renewal of the policy until after the fire, and the partners now sue upon such verbal contract. *Held*, that such a contract can not be enforced without ratification by the principal.

2 Same—Authority to agent to countersign.—The authority given in this case to the agent to countersign policies issued to himself, can not be extended so as to cover verbal contracts made with himself or with a firm of which he was a partner. Nor can it be extended so as to cover the policy executed after the fire.

Appeal from the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding. Opinion filed January 16, 1885.

Messrs. Gere & Beardsley and Messrs. Paddock & Aldis, for appellant.

Mr. Francis M. Wright and Mr. J. S. Wolf, for appellees; as to dealing with agent, cited Story on Agency, § 210; Francis v. Kerker, 85 Ill. 190.

Glens Falls Insurance Co. v. Hopkins.

McCulloch, J. This was a suit by appellees against appellant, to recover insurance money claimed in consequence of a loss by fire. The declaration counts upon two policies, the first of which had expired before the loss, but, as alleged, had been renewed by a parol agreement. The second was issued after the fire and antedated, as is claimed, in pursuance of a parol agreement made before the fire.

The proof shows that one Whitlock was general manager of appellant's business at Chicago with power to appoint sub-agents. In pursuance of this power he had appointed appellee Hopkins as the agent of appellant at Homer, Illinois, with power to receive proposals for insurance, to fix and determine rates, to receive moneys and to countersign, issue and renew policies signed by the president and secretary. It was also his duty to make daily reports to Whitlock of policies issued and renewed, or other business transacted for the company, giving a copy of the written portions of policies issued.

Appellee Hopkins had a store at Homer to which he gave his personal attention, and one at Ogden in company with appellee H. S. Nichols, who had the principal charge there.

After his appointment as agent, Hopkins wrote up a policy on his own stock of goods at Homer and sent the same to Whitlock to be countersigned by him. Whitlock, according to the testimony introduced on the trial, replied in a letter stating that he appreciated his own modesty about countersigning his own policies, and directing him thereafter to sign them himself.

After that he countersigned several policies on his own stock and reported them to Whitlock in the usual order of business, and no objection was made.

On August 24, 1882, he issued policy No. 159, on the stock of goods, fixtures and furniture in Ogden, owned by himself and Nichols, it being for $4,000, and for the period of one year. Upon receiving the report of this policy, Whitlock made some objections by letter to Hopkins, that the rate of premium had not been given, and that it failed to specify the amounts respectively, upon the store, fixtures and furniture, and asking same to be done. Whitlock also, in

his next letter, made some criticisms upon the amount of the risk in comparison with the value of the property insured, and stated that if there was no other insurance, or if there was and it was concurrent with that policy, they would let it stand as written to accommodate him personally, although the practice was not a good one. This is the policy first sued on in this case. The copy in the record fails to show that the correction asked by Whitlock in his first letter to Hopkins had ever been made.

A short time before the expiration of this policy, Nichols went from Ogden to Homer, and had an interview with his partner, Hopkins, about the insurance. At that time one F. O. Hopkins was in the employment of appellee R. S. Hopkins, as book-keeper or clerk, and had authority from the latter to transact insurance business and sign policies in his name. The policy on the store in Ogden was then at Homer in the store safe, where also the surplus funds of the store in Ogden were kept. There was money of the firm there at that time sufficient to pay the premium on the renewals and appellee Hopkins had authority to use it for that purpose.

The substance of that interview, as related by Nichols, is substantially as follows: "When I got to Homer, met Mr. Hopkins somewhere near the door of his business house. I said, 'I came over to see about the Ogden insurance. I want you to keep that written up. Be sure of that.' * * * He said, ' Give yourself no uneasiness, I will see that it is written up and kept written up.' Give yourself no further trouble about it,' and he said, ' Step back and see F. O. Hopkins,' and then drove off. I went back and saw F. O. Hopkins. I said, ' I want to see the Ogden policy. We kept it in the safe there.' He handed me the policy, and I looked at it and saw when it expired, and said to him ' This policy is all right yet; I want you fellows to be sure and keep that policy written up; keep it renewed;' and he said 'All right.' "

After this, nothing was done toward the renewal of the policy until after the fire. No renewal was reported to Whitlock, no money of the Ogden firm was used in the payment of premiums, and R. S. Hopkins had not charged himself with the same in his account with the company.

The fire took place on the 27th day of August, 1883, just three days after the policy had expired. Immediately after the fire appellee Hopkins went to Chicago and saw Whitlock. He related to him all the circumstances above set forth, and asked him to settle the claim, but he refused to recognize it. He then asked him if a policy could not be issued and antedated so as to correspond with his agreement, which Whitlock also refused.

The fire took place on Saturday. On the Monday following, the second policy sued on, No. 181, was made out by F. O. Hopkins, and afterward countersigned by him in the name of appellee R. S. Hopkins. This last policy, before it was signed, the latter took with him to Chicago, and spoke of it to Whitlock, who refused to recognize any right to its renewal. After some unimportant correspondence between him and appellees, this suit was brought.

The cause was tried by the court without the intervention of a jury. Objection was made to the introduction in evidence of the alleged verbal agreement between Nichols and R. S. Hopkins on the ground of its being a private conversation between partners in relation to their business. We do not deem it necessary to discuss this point as we are of the opinion that with all the proof there is in this record, appellees have failed to show a right of recovery.

The second policy was *prima facie* void because it was issued after the property had been destroyed by fire. The first one had expired before the fire. The whole case, therefore, depends upon whether or not there was a valid contract for renewal.

It is a general principle of law, that an agent can not bind his principal in a contract with himself. In this case, appellees were partners and both interested in the alleged verbal contract and both sued upon it. Without ratification by the principal, such a contract can not be enforced. New York Cent. Ins. Co. v. Nat. Protec. Ins. Co., 14 N. Y. R. 85; Bently v. Columbia Ins. Co., 17 N. Y. 421; Neundorff v. The World Ins. Co., 69 N. Y. 391; People's Ins. Co. v. Paddon, 8 Bradwell, 447; May on Insurance, 125.

We do not consider the previous authority given to Hopkins to countersign his own policies, covers the ground in question. Had he made out a new policy, countersigned it himself, reported it in the regular course of business and charged himself with the premium in his account with the company, and no objection had been raised by the company until after the fire, we do not say the company might not have been bound In such case it is possible the policy would have been good without countersigning.

But the authority to countersign policies issued to himself can not be extended so as to cover verbal contracts made with himself or with a firm of which he was a partner. Nor can it be extended so as to cover a policy executed after the fire. Such a policy must depend for its validity upon a prior agreement or undertaking to issue it, which, as we have just seen, did not and could not exist under the circumstances of this case. The authority of Hopkins was to issue *bona fide* policies which this policy, No. 181, was not.

For these reasons the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.