WALTER *v.* MUTUAL CITY & VILLAGE FIRE INSURANCE CO.

1. FIRE INSURANCE—WAIVER OF CONDITIONS—EVIDENCE—QUESTION FOR JURY.

Waiver of a condition in a fire-insurance policy that it should be void if additional insurance was obtained without having the fact indorsed upon the policy is a question for the jury, where it is contended that early notice of the additional insurance was given to the company's secretary, who, notwithstanding, requested proofs of loss, and permitted the insured to incur expense in obtaining them, without intimating that the policy was void.

2. SAME—INSTRUCTIONS.

An insurance company cannot complain of a failure to give requested instructions concerning a waiver of conditions sought to be drawn from the actions of the company prior to a loss, where the instructions given made the right to find a waiver at all depend upon subsequent actions.

3. Trial—Conflicting Testimony—Province of Counsel.

An instruction pointing out the fact that two witnesses testify contrary to the plaintiff upon a certain matter is properly refused, it being the province of counsel to comment upon such conflict in the evidence.

Error to Cass; Coolidge, J. Submitted February 9, 1899. Decided April 18, 1899.

*Assumpsit* by Edgar Walter against the Mutual City & Village Fire Insurance Company for the counties of Berrien, Cass, and Van Buren on a policy of insurance. From a judgment for plaintiff, defendant brings error. Affirmed.

*Coy W. Hendryx* and *James H. Kinnane*, for appellant.

*Charles E. Sweet*, for appellee.

Hooker, J. The plaintiff is the owner of a policy of insurance issued by the defendant, a mutual insurance company, for $80 upon a building, and $300 on the stock, and $20 on furniture and fixtures, contained therein. The building was burned, and this action was brought upon the policy. The plaintiff recovered, and defendant has brought error.

Upon the trial it appeared that the plaintiff obtained a policy of insurance in another company upon the building and fixtures, and that the fact was not indorsed on the policy previously issued by the defendant. The plaintiff testified that he subsequently saw Mr. Porter, the secretary of the defendant, on the street, and told him what he had done, and wished him to take from the policy what was on the building and fixtures, and to put $100 more on the merchandise, making it $400. The change was not made by Mr. Porter. Mr. Porter denied this conversation. The policy sued upon contained the following provision:

"The company will not insure any single buildingand

contents to an amount over $2,000; and in case the assured have, or shall hereafter obtain, any other policy or agreement for insurance, whether valid or not, upon the property insured by this company, the policy of this company is null and void, unless said other insurance is indorsed thereon."

The policy required that the plaintiff should take an inventory of his goods once in three years. After the fire, the plaintiff notified the company by postal card, and received the following answer:

"DOWAGIAC, MICH., Dec. 9, '95.
"EDGAR WALTER,
    "Sumnerville, Mich.
"*Dear Sir:* Your card announcing your fire loss, and I hasten to answer. Inclosed you will find a portion of our charter, with section No. 19 marked for your attention, which read carefully. You must furnish us with a duplicate of your last inventory, together with duplicate of all bills of goods bought since the making of your last inventory. If you have not the bills themselves, the dealers will furnish you with those, upon your application to them. Also make a statement of your loss, as to its origin, and have it sworn to before a notary. Then forward all your papers, together with your policy, to this office.                    Respectfully yours,
                    "HENRY H. PORTER."

He testified that:

"After receiving this letter I did not furnish an inventory at the time, because I supposed my last inventory was burned up with the balance of the papers; but I afterwards found an inventory made in '94, in a coat pocket at home, and I offered it to Mr. Porter. This was at the second time I was at his office after the fire. He said he did not care for it, or something to that effect. After the fire, and before finding the inventory, I had succeeded in getting most of the bills and duplicates, and either sent them or took them to Mr. Porter. There were numerous small bills that I could not furnish. Mr. Porter examined me. Afterwards, Mr. Hendryx and Mr. Warner, of Decatur, a member of defendant company, came to Sumnerville to look the matter up. I subsequently came before them at their office in the city of Dowagiac. Mr.

Porter was also present. No settlement, or proposition to settle, was then made on either side. (A writing purporting to be an inventory taken in 1894 was here presented to witness and offered in evidence.) I did not offer this at my first interview with Mr. Porter, and I think I told him that I had no inventory, supposing that it had been burned in the fire. I afterwards told him that I had accidentally found it.

"*Q.* Did you show it to Mr. Porter?

"*A.* I offered it to him, but he said he did not care for it. Mr. Porter is the secretary of the defendant company."

On cross-examination he stated:

"I showed the inventory only once. I think it was the time he wrote me to come up there, but I don't remember the date. I have not his letter. At that time I met Dr. Rix, president of the defendant company, and, as I recollect, Mr. Bond. I had made an inventory every year in December. I have no inventory except the one made in 1894. I don't know whether I have preserved them or not. * * * When I first saw Mr. Porter after the fire, I told him I hadn't the inventory of '94. I presumed it was burned. After I found it, I tendered it to Mr. Porter, and he said, in effect, that he did not care for it at that time. I did not refuse to let him have it."

Mr. Porter, defendant's secretary, testified that:

"After the fire, he made out and offered a purported proof of loss. It was at my office that he presented it. I called his attention to it, and noted the fact that it contained no inventory. I told him that he would have to furnish the company with duplicate invoices from the time he took his last inventory, and he said that he had not made any. I said, 'Haven't you made any inventory at all?' and he said, 'No;' that he had not made any in three years. 'Well,' says I, 'Mr. Walter, under the condition of our charter, this company is not liable for this loss,'—that is, if the board of directors was a mind to take that stand; it was optional with them to do it; we had no idea of doing it at that time,—'because the charter requires you to make an inventory.' My son, who is a clerk in the office of the company, was present at this talk, which was in the company's office at Dowagiac. This was on December 26th. Our plan is to take the inventory, and figure from the amount of bills and the last inventory.

That is the only way we have to get at the amount of the stock of goods and adjust it. I afterwards heard from him that he had unexpectedly found his inventory in a little book in his coat pocket.     *    *    *

"After the receipt of this letter [letter referring to inventory], plaintiff was before the adjusting board of defendant company. I had notified him to come, but before I did that I had ascertained about the robbing of the store and the other insurance, and just at the adjournment he took the little book containing the inventory and put it in his pocket. Said he wanted it, as it contained some private accounts, and took it away. At the time the affidavit was made, December 26, 1895, he stated that thieves had broken into the store, and that a portion of the stock had been stolen. Stated that nearly everything had been taken, even to a barrel of molasses. I told him that, if the store had been burglarized, it was his duty to find out and prosecute those who did it. Told him we would do all we could to help him in it. * * * At the time I have testified to, when the plaintiff came before the adjusting board and presented the purported inventory, there were present, besides myself, Dr. Rix and Mr. Warner, officers of said company, and my son.

"What I said to him about getting invoices was written before my interview with him, when he told me he had no inventory. Subsequently, upon my report, action was taken by the board of directors declaring the policy null and void because of the forfeiture resulting from the failure to observe the provisions of the charter. This meeting was on the 17th of March following, and of this action the plaintiff had notice. The talk about the inventory was the first time I saw him, December 26th. Then we had a meeting of the board of adjusters about the middle of January or the first of February,—will not say certain. On December 26th, I told him to get his invoices. Said nothing about inventory, because he said he had none. Pursuant to my directions, he furnished me more invoices, and wrote that letter, that he had unexpectedly found the inventory of his stock of 1894.

"When Walter said he had no inventory, I did not immediately elect to take advantage of that clause in the policy; I had no right to. The board of directors never took any action. The board of adjusters never took any action on that particular part, but it was the whole thing in general. We took exceptions to that, and the fact that

the stock of goods, as Mr. Walter stated in that affidavit, that he had heard these goods were stolen before the fire. On that ground the company was not liable if the goods were stolen. I don't know as they have ever specified any action upon that particular point.

"Q. You afterwards notified him of the meeting of the board of adjusters?

"A. Yes, sir.

"Q. To be present?

"A. Yes, sir.

"Q. Furnish whatever he could?

"A. Yes, sir. That is, he could have a hearing there.

"Q. That hearing was for him to produce whatever he could?

"A. Certainly. All the action the board of directors took was at the meeting of March 17, '96, and is as follows: 'The policy of Edgar Walter was declared null and void. Attorney Hendryx was present, and reported that he thought the Walter loss at Sumnerville could be settled for a small amount. On motion, Directors Warner and Bond, together with Attorney Hendryx, were appointed a committee to settle the Walter claim, by way of compromise.' Mr. Walter was never notified of this action. He afterwards appeared before the board with his attorney."

It is admitted that by obtaining additional insurance, without having the fact indorsed upon the policy issued by the defendant, said policy became void, unless the condition was waived. The plaintiff's counsel claims that it was waived by the failure of Porter to object to such insurance when informed of its procurement, and that, if mistaken in this, defendant waived the condition by requesting proofs of loss, and permitting the plaintiff to incur expense in obtaining them, without intimating that it considered the policy void. Under our own cases, the court was warranted in leaving the question of waiver to the jury. *Pennsylvania Fire Ins. Co.* v. *Kittle,* 39 Mich. 51; *Carpenter* v. *Insurance Co.,* 61 Mich. 644; *Marthinson* v. *Insurance Co.,* 64 Mich. 372; *Cleaver* v. *Insurance Co.,* 71 Mich. 421; *Burnham* v. *Casualty Co.,* 117 Mich. 155; *Granger* v. *Assurance Co.,* 119 Mich. 177; *First Baptist Church of Jackson* v. *Insurance Co.,* Id. 203.

Error is assigned upon the refusal of the court to give the defendant's third request.   It was as follows:

"(3) There is upon the plaintiff the burden to establish every essential element of his case by a clear preponderance of testimony.   The burden is upon him to establish the fact that the inventory produced before the board of adjusters of the defendant company, and here offered in evidence, is genuine, and was in fact made in the time and manner it purports to be and as the plaintiff swears it was.   There is in the case the testimony of the witness H. H. Porter and his son against the testimony of the plaintiff, tending to show that he stated on December 26th, when offering proof of loss, that he had no inventory, and had not taken any within the past three years, and, in fact, had taken no inventory at all.   If you believe, from the testimony on this point, that the plaintiff did not, in fact, take and make the inventory in the time and manner it is here claimed, then your verdict will· be for the defendant."

The court was under no obligation to point out the fact that two witnesses testified contrary to the plaintiff upon the subject of the inventory.   That was the province of counsel.   The question of genuineness was left to the jury, under fair instructions.

Counsel complain of the refusal of the court to give the fifth and ninth requests, reading as follows:

"(5) The plaintiff claims that on or about the time that he paid his last assessment, prior to the fire for which the loss is here claimed, he stated to the secretary of the defendant company, on the street in the city of Dowagiac, that he had taken other insurance on the same property, with another company.   This the secretary, in his testimony, denies.   If you shall find, as a matter of fact, in the plaintiff's favor in this point, you are further instructed that it is the testimony of the plaintiff that the secretary of the defendant company made absolutely no response or acquiescence thereto, and you would not be authorized to infer a waiver by defendant company from any such statement as the plaintiff claims that he made."

"(9) The effecting of subsequent insurance on the part of the plaintiff rendered the policy of the defendant company void, whether said subsequent insurance was valid

or not, and said policy could only be revived by a new contract."

But he did what was equivalent, by making the waiver depend on the action of the company after the fire.

There are some other questions of minor importance which we think it unnecessary to discuss, further than to say that we find no error in them.

The judgment is affirmed.

The other Justices concurred.