DULL *v.* ROYAL INSURANCE CO.[1]

1. INSURANCE—TORNADO INSURANCE—TITLE.
   A policy of insurance against damage by tornado, issued in the name of an owner, who at the time of the issuance was under contract to convey the property to a corporation, of which he was a stockholder, and who subsequently conveyed the same without the consent of the insurer, is void under a clause in the policy by which the policy is declared invalid if the insured was not the sole and unconditional owner, and if any conveyance should be made without the consent of the company.

2. SAME — PRINCIPAL AND AGENT—ADVERSE INTEREST OF AGENT.
   An agent cannot represent and bind two parties having opposing interests in the same transaction, nor can he be at the same time a party and an agent of the opposite party, unless all persons in interest know of the dual relation and assent to it.

3. SAME—GOOD FAITH OF AGENT—INTEREST IN TRANSACTION.
   If an agent for an insurance company is personally interested in the property insured, no policy issued by him thereon, or act done by him in connection therewith, binds the insurance company unless it knows of and assents to the situation.

4. SAME—WAIVER OF DEFENSES.
   The defense of forfeiture for a change of title is not waived by omitting to claim a forfeiture in the first letter written by the insurance company to the insured, which stated that the matter would be referred to its agent, where a subsequent letter expressly claimed the right to rely on all defenses.

Error to Wayne; Rohnert, J. Submitted January 14, 1910. (Docket No. 73.) Decided February 3, 1910.

Assumpsit by John H. Dull, trustee, against the Royal Insurance Company on a policy of insurance. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

[1] Rehearing pending.

*Arthur D. Prosser*, for appellant.

*Lucking, Emmons & Helfman* and *Charles B. Obermeyer*, for appellee.

Plaintiff sues in assumpsit to recover on a tornado insurance policy, issued by defendant to one Pfuntner, June 15, 1907. Defendant pleaded the general issue, and set up as a special defense that the title to the property insured had been changed after the date of the policy, and before the loss, without the consent of defendant indorsed in writing on said policy, thus avoiding the policy according to its terms. The policy contract contained the following provision:

"In case any change shall take place in the title or possession of the property herein described (except by succession) by reason of the death of the assured whether by legal process or judicial decree, or voluntary transfer or conveyance; or if the assured shall not be the sole and unconditional owner in fee of said property; or if this policy shall be assigned, without consent of this company indorsed in writing hereon, then in each and every one of the above cases this policy shall immediately become null and void. * * *

"This policy is made and accepted subject to the foregoing conditions and stipulations, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provision or conditions, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written or attached hereto."

It appears that Pfuntner owned certain lands in Macomb county; that in January, 1907, Pfuntner, Dull, Ebert, Kearney, and Beiderman, formed a corporation

known as the Rochester Sandstone Brick Company. Beiderman was a stockholder, member of the board of directors, and vice president of this company from the time of its formation to the time of the trial in the court below. Pfuntner, in the same month, entered into a contract with the company to erect a brick plant on his land, and convey the same to the company, for a certain sum of money in cash and a certain amount of the capital stock of the company. He proceeded to erect the plant, and in June, 1907, insured it in his own name, against loss by fire or tornado. This insurance was issued to him by the defendant upon the solicitation of Beiderman. The insurance was paid for in November, 1907, and February, 1908, by Dull to Beiderman, the checks being indorsed by Beiderman to Detroit Insurance Agency. On February 3, 1908, Pfuntner deeded the property covered by the policy in question to John H. Dull, trustee, plaintiff herein, Dull acting as trustee for the Rochester Sandstone Brick Company. No notice of this transfer was given to defendant. The loss occurred April 25, 1908. No testimony was introduced tending to show that Beiderman was the agent of defendant company, nor was it shown that Beiderman knew of the transfer of the title from Pfuntner to Dull, trustee. The policy was countersigned by the Detroit Insurance Agency, by George J. Gnau. Neither Beiderman, nor any member of the Detroit Insurance Agency, was sworn as a witness. A verdict was directed for defendant.

BROOKE, J. ( *after stating the facts* ). We are of opinion that the policy in question must be held to have been void at the time of its issuance, by reason of the fact that Pfuntner was not at that time "the sole and unconditional owner in fee of said property," or became void upon the transfer of title to plaintiff, without consent of defendant, unless it can be said that Beiderman knew of the condition of the title at the time the insurance was

159 MICH.—43.

written, that he knew of the transfer from Pfuntner to Dull, trustee, and that his knowledge was binding upon defendant. *Jaskulski* v. *Insurance Co.*, 131 Mich. 603 (92 N. W. 98), and cases cited; *Cronin* v. *Fire Ass'n*, 123 Mich. 277 (82 N. W. 45), and cases cited; *A. M. Todd Co.* v. *Insurance Co.*, 137 Mich. 188 (100 N. W. 442).

It is urged for the plaintiff that, inasmuch as Beiderman was a stockholder in and an officer of the brick company, not only at the time the contract with Pfuntner was made, but also at the time Pfuntner deeded to Dull, as trustee, for the brick company, he must be held to have had knowledge of the condition of the title, and that the defendant is bound by his knowledge so gained. We cannot. agree with this view. The record fails to show in what capacity Beiderman solicited the insurance, whether as agent, or broker, or in his capacity as an officer of the company, which at that time held a contract interest in the property, and is silent as to his connection with the defendant, except that the premium passed through his hands, on its way into the hands of the Detroit agency of defendant. Even if it were clearly proven that in soliciting the insurance he acted as agent for defendant, we think the defendant company would not be bound by uncommunicated facts, coming to his knowledge in his capacity as an officer or stockholder of the brick company. An agent cannot bind two parties having opposing interests in the same transaction, nor can he be at the same time a party and the agent of the opposite party, unless both parties know of the dual relation and assent to it. Mechem on Agency, §§ 66–68.

There is no evidence that the defendant knew of Beiderman's connection with the brick company, or with Pfuntner, or even knew of his existence. It seems to be settled law that, if an agent is personally interested in the property insured, no policy issued by him thereon, or act done by him in connection therewith, binds the insurance company, unless known and assented to by it. 1 May,

on Insurance (4th Ed.), § 125; 3 Cooley's Briefs on Insurance, p. 2529; 22 Cyc. p. 1435; *Zimmerman* v. *Insurance Co.*, 110 Mich. 399 (68 N. W. 215, 33 L. R. A. 698); *Spare* v. *Insurance Co.*, 19 Fed. 14; *Ritt* v. *Insurance Co.*, 41 Barb. (N. Y.) 353; *Arispe Mercantile Co.* v. *Insurance Co.*, 133 Iowa, 272 (110 N. W. 593, 9 L. R. A. [N. S.] 1084, and authorities collected in note); *Greenwood Ice & Coal Co.* v. *Insurance Co.*, 72 Miss. 46 (17 South. 83); *Wildberger* v. *Insurance Co.*, 72 Miss. 338 (17 South. 282, 28 L. R. A. 220, 48 Am. St. Rep. 558); *New York Central Ins. Co.* v. *National Protection Ins. Co.*, 14 N. Y. 85; *Rockford Ins. Co.* v. *Winfield*, 57 Kan. 576 (47 Pac. 511); *Glens Falls Ins. Co.* v. *Hopkins*, 16 Ill. App. 220; *British America Assurance Co.* v. *Cooper*, 6 Colo. App. 25 (40 Pac. 147). Particular attention is directed to the case of *Arispe Mercantile Co.* v. *Insurance Co.*, *supra*, where the facts are nearly identical with those in the case at bar and where the opinion is exhaustive and supported by many authorities.

It is claimed by plaintiff that defendant, after receiving notice of the loss, so conducted itself that it must be held to have waived the forfeiture. This claim is based upon the following correspondence:

"DETROIT, MICH., May 1, 1908.
"LAW BROS., Mgrs.,
"Royal Ins. Co.,
"Royal Ins. Bldg.,
"Chicago, Ill.,

"*Gentlemen:* Referring to tornado policy No. 10742339 in favor of Charles H. Pfuntner, Detroit, Mich. Through an unfortunate and uncalled for remark made by Mr. Pfuntner who dropped into the office during my conference with Mr. Duffey, negotiations for settlement of loss were abruptly terminated and I was referred to your office for adjustment, Mr. Duffey apparently being very much angered and would have no further hand in the matter, a condition I very much regretted, when it was found he would not continue interview to a satisfactory conclusion. The situation is just this: Mr. Pfuntner and I engaged

in the proposition of a sand lime brick plant near Rochester, Mich., a year ago and, while it was a stock company, all the property consisting of a farm of 150 acres, buildings, etc., were in his name and were to be turned over to the company when he had fulfilled certain requirements which he failed to do, and I purchased Mr. Pfuntner's interest in the property Feb. 1, '08, paying him what he actually put into the deal, part cash and the balance notes coming due 3 and 6 months from date of contract, Feb. 1, '08, for him to sell and I to buy; at the fulfillment of this contract he is to turn over all his rights, title and interest, etc., to me. In the meantime he deeded the property to me turning over to me all insurance policies but still retaining a few shares of stock to keep the organization intact until such time as I made my final settlement with him when he would under the contract be obliged to sever his connection with the brick company. Now then, during this time a technical violation of the provisions of the above named policy took place, that is to say, I failed to present the matter to your company for a transfer of the policy from Mr. Pfuntner to me, an oversight for which I may be responsible personally, notwithstanding the fact it was known to the representative of the Royal Ins. Co. that change of ownership of the property had taken place a month or six weeks prior to the loss by windstorm which occurred between 11 and 12 o'clock a. m. Saturday, April the 25th, '08. The question of the transfer of the policy was not referred to and it did not occur to me till the accident to the building happened when the thought came to me that we had a tornado insurance policy on the property and on looking it up found the stipulations in the same had not been carried out. The adjustment was taken up with your representatives here, and was cut off, as said before, very suddenly through no fault of mine at all, but much to my discomfort and regret. Will you kindly take the case up with Mr. Duffey and have him continue the investigation and settlement of my claim. Please understand I am not criticising Mr. Duffey's attitude in the way he took offense at Mr. Pfuntner's remark as any person with a spark of manhood in him would no doubt have resented the insult. But bear in mind as you go along that I am not responsible for it, and do not under any circumstances approve or resort to any such tactics.

"Yours truly,

"J. H. DULL."

"CHICAGO, 5th May, 1908.
"Mr. J. H. DULL,
    "President and Manager, The Rochester Sandstone
        Brick Co.,
            "Detroit, Mich.
    "*Dear Sir:* We are in receipt of your favor of the 1st
instant, having reference to a conversation had with our
State agent, Mr. B. T. Duffey, and have carefully noted
contents.    We will take up the matter with that gentle-
man.    We are, dear sir,
                "Yours very truly,
                    "LAW BROS., Managers."

                "DETROIT, MICH., May 9, 1908.
"Messrs. LAW BROS., Mgrs.,
    "Royal Ins. Bldg.,
        "Chicago, Ill:
    "*Gentlemen:* Referring to yours of the 5th inst., Mr.
Duffey has been absent since receipt of yours till today,
when I fully expected to have him meet me, but he de-
clined to do so pleading other business would prevent.    I
have power of attorney from Mr. Pfuntner, the assured,
to settle this claim and to receive full benefits of policy No.
10742339.    The damage has been carefully estimated by
the parties who erected the building, and furnished the
material, I hereby give you this formal notice that the
damage amounts to $1,043.92 an excess of $43.92 over and
above the amount of the policy.    I trust you will promptly
adjust my claim.    An early reply will greatly oblige,
                "Yours truly,
                    " J. H. DULL."

                "CHICAGO, May 15, 1908.
"Mr. JOHN H. DULL,
    "Majestic Building,
        "Detroit, Mich.
    "*Dear Sir:* We beg to own your letter of the 9th inst.
with reference to policy 10742339 of this company issued
at its Detroit, Mich. agency, to Charles H. Pfuntner, and
in reply thereto have to say that if in the opinion of your-
self or your attorney, a valid claim exists against this
company by reason of said policy contract, you are re-
ferred to the contract itself for instructions as to such
action as you may see fit to take.
    "You are hereby notified that this company has not
waived, does not waive, and does not intend to waive any

of its rights under said contract, nor any of the terms or conditions thereof.    We are, dear sir,

"Yours very truly,

"L. C. STARK, Loss Supt."

Plaintiff urges that, because defendant did not in its first letter claim a forfeiture, it therefore waived its right to insist on it later, citing *Walter* v. *Insurance Co.*, 120 Mich. 35 (78 N. W. 1011); *Burnham* v. *Casualty Co.*, 117 Mich. 147 (75 N. W. 445); *Rauch* v. *Insurance Co.*, 131 Mich. 281 (91 N. W. 160); *Granger* v. *Assurance Co.*, 119 Mich. 177 (77 N. W. 693); *Cleaver* v. *Insurance Co.*, 71 Mich. 414 (39 N. W. 571, 15 Am. St. Rep. 275); *Marthinson* v. *Insurance Co.*, 64 Mich. 372 (31 N. W. 291).    An examination of these cases shows that in each one of them the defendant company did some act which induced the plaintiff to go to trouble or expense, without disclosing the fact that it intended to claim a forfeiture.    The letters, written by defendant herein, cannot be construed as an invitation to plaintiff to act or refrain from acting to his detriment; on the contrary, we think they fully advise plaintiff that defendant intended to rely upon its legal rights.

The other errors assigned have been considered, but require no discussion.

The judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., concurred.