ZEITLER *v.* CONCORDIA FIRE INSURANCE CO.

1. INSURANCE—CHANGE OF INTEREST — ESTATES OF DECEDENTS — EXECUTORS AND ADMINISTRATORS — VENDOR AND PURCHASER— LAND CONTRACT.

Under a standard policy issued to the estate of Katherine Munson, deceased, during probate proceedings, such a material change of title was not effected by the administrator's entering into an executory contract of sale, but retaining possession, as to avoid the policy.

2. SAME—NOTICE OF CONDITIONS.

An insurer, dealing with an administrator in charge of property in process of probate, would be presumed to have some knowledge of the nature of the proceedings, their purpose and the law applicable to them.

3. SAME.

Such policy was an open one, designed to protect the interests of whom it might concern, of any person having a pecuniary interest in the property.

4. SAME—LAND CONTRACTS—SPECIFIC PERFORMANCE.

Where the vendee had not such an interest at the time of loss as to authorize him to enforce the contract specifically, and secure possession of the premises, a material change of title had not occurred.

5. SAME—FORFEITURES.

Courts do not favor forfeitures, and will so construe contracts as to prevent them whenever it may be done without doing violence to plain stipulations.

6. SAME—POLICY OF FIRE INSURANCE.

Where possession and control of insured premises and an insurable interest are retained by the insured, an executory agreement for the sale thereof does not so violate the spirit of the contract as to render the policy void.

Case-made from Charlevoix; Mayne, J. Submitted January 23, 1912. (Docket No. 147.) Decided March 29, 1912.

Assumpsit by Charles J. Zeitler, administrator of the estate of Katherine Munson, deceased, against the Concordia Fire Insurance Company upon a policy of insurance. Judgment for plaintiff. Defendant brings error. Affirmed.

*George F. & Peter J. Monaghan*, for appellant.

*R. W. Kane*, for appellee.

Steere, J. This action was brought to recover under a policy of insurance issued by defendant, covering the barn and other buildings on an 80-acre farm in Charlevoix county; said barn being totally destroyed by fire on the 9th of October, 1910. The farm had belonged to Katherine Munson, who died in December, 1909, and plaintiff was administrator of her estate. The case was tried before the court without a jury and a judgment entered in favor of the plaintiff for $500 with interest.

The material facts in the case are undisputed. Up to the time of the fire in question, Peter Munson, husband of said Katherine Munson, deceased, lived upon and was in possession of said farm. On May 5, 1910, the defendant issued to the "estate of Katherine Munson, deceased, a policy of insurance in the sum of $1,300 for the term of three years." By this policy the dwelling house on said farm was insured for $800 and the barn for $500. The policy is a Michigan standard policy, providing, among other things, as follows:

"This entire policy, unless otherwise provided by agreement, indorsed hereon, shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * * or if any change, other than by the death of the insured, takes place in interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process, or judgment, by voluntary act of the insured, or otherwise."

Before this policy was issued, and on the 2d of May,

1910, the plaintiff, acting as administrator of the estate of said Katherine Munson, applied for and obtained from the probate court for the county of Charlevoix a license to sell the farm on which said barn was situated.

On the 2d of June, 1910, about a month after the policy was issued, plaintiff, under said license, entered into a contract with one William O. Ward for the sale of said property, giving a land contract in the usual form. This contract was executed and delivered on the day stated; the plaintiff, as administrator, agreeing to sell to said Ward, and said Ward agreeing to purchase, the property for the sum of $2,500, payable $160 down, $1,340 on or before July 1, 1910, and the balance of $1,000 on or before June 1, 1911. On or before July 1, 1910 the sum of $1,500 had been paid on said contract. Possession of the premises was not to be given to said Ward until the 1st of December, 1910.

By the terms of said contract, it was agreed that this insurance policy should be turned over by plaintiff to Ward upon full performance of his part of the contract; that, in the meantime, if any loss occurred, it should be payable to the plaintiff and the second party as their respective interests appear, it being agreed, however, that the moneys arising from such loss should be available to pay for repairing or rebuilding any structures affected by the loss.

This sale was confirmed by the probate court of Charlevoix county on the 13th of June, 1910. The order of confirmation contained a proper recital of the facts. Ward made full payment on the contract subsequent to the fire and received a deed from the administrator on the 5th of December, 1910.

It is undisputed that no request was made to the company for permission to sell, and the defendant company had no actual notice of this contract of sale of the premises to Ward. No change of any character was made in the policy subsequent to its issue. It is undisputed that the barn covered by this policy was totally destroyed, and its

value exceeded $500. It is also conceded that proper proof of loss was made under the policy.

Plaintiff's declaration is in the usual form, counting upon the policy of insurance. The defendant, under the plea of the general issue, gave notice that by reason of the sale of the property there was such a change in interest and title of the subject of insurance as to effect a forfeiture; that the defendant had no actual knowledge and was not chargeable with knowledge of the proceedings had in the probate court touching the matter of the estate of Katherine Munson and the sale of the property in question, and therefore said company was justified in refusing to pay the loss suffered by reason of the destruction of the property by fire.

Defendant's assignments of error relate to rulings of the court in refusing to find according to the various requests presented in behalf of the defense and in making certain findings, which resulted in the judgment rendered. They all revolve around the one question of forfeiture by reason of sale in violation of stipulations in the policy.

At the time of issuing the policy, the property insured belonged to the heirs of Katherine Munson, whoever they might be, subject to any debts owing by her when she died, or any expenses incurred in connection with the property she left. This property was in the hands of the administrator, being administered under direction of the probate court. A petition for leave to sell the property to pay debts of the estate had been filed. The proceedings of the court, in administering the estate, were the usual and necessary steps for paying debts and expenses and distributing property of a deceased person, and the records of the proceedings of the court were public records.

It must be presumed that any one dealing with an official in charge of such property, under such conditions, would have some knowledge of the nature of the proceedings, their purpose, and the law applicable to them. The administrator did not own the property, and had no interest in it except to perform his official duty in that con-

naction, as an agency of the probate court. Neither the actual owner of the property or creditors of the estate are named in the policy or were known to the insurer, so far as disclosed. The business was done with the administrator, necessarily known to be a temporary official in charge while the property was going through the probate court. The policy was issued in omnibus form to an entity designated "the estate of Katherine Munson." It was, in effect, an open policy, to protect the interests of whom it might concern; any living parties having a pecuninary interest therein.

Under such conditions, we are led to inquire if the rules of construction which are adopted in some cases in some jurisdictions, as to the provisions in a policy touching "any change in interest, * * * title, or possession of the subject of insurance," are controlling here.

The matter of possession is always regarded of importance in cases of this kind. The legal title, the control, and the possession of this property remained, at the time of the fire, exactly the same as when the policy was issued. Before it was issued, steps had been initiated looking to a sale of the property to pay creditors, and at the time of the fire those steps had progressed to an executory contract providing for a deed of the property, assignment of the insurance policy, and delivery of possession to a certain vendee at a future period, in case he performed on his part and paid the full purchase price. It was a contingency which might or might not happen. At the time of the loss, he had neither legal title nor right to the possession.

One of the tests recognized by the courts, as applied to this question, is whether or not the vendee could enforce specific performance of the contract, holding in such case that, if he could, there had been a material change in interest which would invalidate the policy. That rule is a reasonable one when construed as meaning the legal right to enforce conveyance of title and delivery of possession at the time of the loss.

In the case at bar there was not, at the time of the fire, an outstanding contract under which, as the facts then existed, the vendee could enforce specific performance. He could not at that time enforce conveyance of title to him or get possession.

The contract of insurance in this case is a " Michigan Standard Policy "—a form of insurance policy adopted and promulgated by statutory authority for general use throughout the State. It would be narrow and unjustly technical to hold that the form of words adopted for such a policy is inelastic and must have an exact and definite meaning by strict construction, always conveying the same understanding between the parties under all varying circumstances. We think such contracts should be construed with reference to the relations of the parties and the character and situation of the property insured. The court should interpret those forfeiture clauses in the light of the facts and circumstances· proven, within proper limits, having in mind the ordinary meaning of the language found in them as applied to the purpose for which the contract was made.

It is a general rule of construction that the courts do not favor forfeitures, and will so construe contracts as to prevent them whenever it can be done without doing violence to plain contract stipulations.

Under the facts admitted, we must assume in this case that it was the understanding between the parties that the estate's insurable interest in this property, in consideration of the premium which the estate paid, should be protected from fire while in the hands of the administrator passing through probate. The contract should be construed as having been made for that purpose. Ostrander on Fire Insurance, § 67.

Special knowledge or notice, by or to the company's agent, cannot affect or supersede the written policy; but the policy itself, issued by the company, designating an estate as beneficiary, imputes to the insurer some knowledge of the special conditions surrounding the property

insured. Irrespective of the claim of constructive notice of the license to sell, defendant is presumed to know, when insuring an estate, that it is dealing with a temporary condition of property of inheritance which must terminate by sale or distribution of such property, and makes the contract conformable to, and to be construed in the light of, the relations of the parties and circumstances surrounding the property insured.

The cases dealing with conditions in fire insurance policies which involve avoidance in case of breach are numerous. Many are at variance, not only by reason of distinct provisions of the different classes under consideration, but there is a lack of harmony where the conditions are the same. Clauses like those in the Michigan standard policy, rendering the same void in the case of change in the interest, title, or possession of the insured property, are now in general use.

Although there is some conflict upon the question, the weight of authority recognizes the general rule that, where possession and control of the property and an insurable interest are retained by the insured, an executory agreement for its sale does not so violate the spirit of such conditions as to render the policy void.

It is claimed this question is passed upon to the contrary in Michigan, and the case of *Excelsior Foundry Co.* v. *Assurance Co.*, 135 Mich. 467 (98 N. W. 9), is cited in support of that contention. This case is also found in volume 3, Am. & Eng. Ann. Cas. 707, followed by a review of numerous authorities on the subject. The *Excelsior Case* recognizes that a conflict of authority exists on the question of whether a policy like the Michigan standard policy is rendered void in case the insured gives an executory contract for the sale of the property; but the court was not required to pass upon that question in deciding the case. The testimony in that case showed that the insured, at the time of obtaining the policy, did not own the fee of the property, but simply

169 MICH.—36.

held it by a land contract; that previous to the fire the contract had been reassigned to the owner of the fee, who had deeded the property to others, whose title in fee had been recorded, therefore the action of the circuit judge in holding that there had been such a material change in the interest of the insured as avoided the policy was sustained. *Dull* v. *Insurance Co.*, 159 Mich. 671 (124 N. W. 533), went no further than to hold that a policy was void because the insured, at the time the policy was issued, was not the sole and unconditional owner as represented. The question before us is not foreclosed by any previous decisions in this court.

In *Garner* v. *Insurance Co.*, 73 Kan. 127 (84 Pac. 717, 4 L. R. A. [N. S.] 654, 117 Am. St. Rep. 460, 9 Am. & Eng. Ann. Cas. 459), a forfeiture was refused under a policy containing a forfeiture clause, identical with the one before us, where the insured held the legal title and possession of the property, although he had given an executory contract to sell and had been paid the full purchase price. It was there said:

"It has been held that an executory contract to convey insured real estate does not operate as a forfeiture of the policy under a provision that it should be void 'if the interest of the assured be or become other than the entire, unconditional, unencumbered and sole ownership of the property.' (*Arkansas Fire Ins. Co.* v. *Wilson*, 67 Ark. 553 [55 S. W. 933, 48 L. R. A. 510, 77 Am. St. Rep. 129]; *Franklin Ins. Co.* v. *Feist*, 31 Ind. App. 390 [68 N. E. 188]); or where the condition of the policy is that it shall be void in case 'the property be sold or transferred or any change take place in the title or possession.' (*Browning* v. *Insurance Co.*, 71 N. Y. 508 [27 Am. Rep. 86]); or 'if any change take place in the interest, title, or possession of the subject of insurance.' (*Erb* v. *Insurance Co.*, 98 Iowa, 606 [67 N. W. 583, 40 L. R. A. 845]; *Insurance Co.* v. *Tompkies & Co.*, 30 Tex. Civ. App. 404 [71 S. W. 812])."

In disposing of this case we are not required to either reject the above rule or recognize it as an inflexible one of universal application. In fire insurance the moral haz-

ard, as well as the physical, is recognized as an important factor. The legitimate object of, and primary reason for, the restrictive clauses in a policy is the protection of the insurer against risks materially different from those undertaken at the time of issuing the policy. To that end the insurer is entitled to insist on a continuance of the personal vigilance, possession, supervision, control, care, and moral responsibility in relation to the property stipulated in the contract. In this case the insured was an estate, and the contract must be presumed to have been made with reference to the usual changing conditions of property in the hands of an administrator, passing through probate. At the time of the fire, it was yet in his hands, passing through probate, and the legal title was in the estate, which yet had an insurable interest in excess of the loss. The legal title, possession, care, custody, and moral and physical hazard were unchanged.

Forfeiture is a mixed question of law and fact. The provisions of a policy against a change of interest are to be construed with reference to both the circumstances of the case and the object of the clause, and with strictness against the insurer. The insured, being an estate, still having an insurable interest in the property, with legal title and possession, under the same caretaker and maintaining the same physical conditions, we are constrained to hold that the restrictive clause was not so violated as to work a forfeiture.

The learned circuit judge was not in error in finding, "under the facts stipulated neither the moral nor physical hazard of the risk was increased," and his judgment construing the contract in favor of indemnity and against forfeiture is affirmed.

MOORE, C. J., and BROOKE and STONE, JJ., concurred. McALVAY, BLAIR, and OSTRANDER, JJ., concurred in the result. BIRD, J., did not sit.