SWEENEY v. TRAVELERS' INSURANCE COMPANY.

1. INSURANCE—ACCIDENT INSURANCE—PLEADING—AMENDMENTS.
   Under 3 Comp. Laws 1915, § 12478, where the notice attached to a plea in an action on an accident insurance policy is not broad enough to make the defense of failure to make affirmative proof required by the policy within the time limited, the trial judge may grant an amendment of the plea.

2. SAME—NOTICE—WAIVER.
   A delay of more than six months in giving notice of an accident is too long under an accident policy requiring "immediate written notice."

3. SAME—ACCIDENT INSURANCE—WAIVER—FORFEITURES.
   There was no waiver of the time limit for filing proofs of loss under an accident policy where the policy had become forfeited because of delay in giving notice of the injury, and an agent of the insurer, in his conferences with plaintiff's attorney, stated that the defense was that the notice of injury was given too late and that the trouble from which plaintiff suffered did not proceed from the injury, and that the company reserved what rights it had, and, in later sending a blank for furnishing proofs of loss to plaintiff, stated that there had been considerable delay in reporting the accident but he was furnishing the blank without prejudice to the rights of the company, and the policy provided that no agent had power to waive any condition of the policy.[1]

Error to Wayne; North, J., presiding. Submitted October 19, 1917. (Docket No. 66.) Decided December 28, 1917.

Assumpsit by John S. Sweeney against the Travelers' Insurance Company of Hartford, Connecticut, on certain policies of accident insurance. Judg-

[1] On waiver of provision in employers' liability or other indemnity policies requiring immediate notice of accident, claim or suit, see note in 3 B. R. C. 723.

ment for defendant on a directed verdict.    Plaintiff
brings error.    Affirmed.

*Donnelly, Lyster & Munro,* for appellant.

*Vandeveer & Foster,* for appellee.

MOORE, J.    In the year 1896, two policies of insur-
ance amounting to $15,000 were issued by the defend-
ant to the plaintiff to run for 30 years.    Premiums
were paid on them for the first ten years, and there-
after they remained in force without further pay-
ment.    They provided, among other things, for com-
pensation in case of accidental injuries.    On Novem-
ber 21, 1913, plaintiff received a bodily injury which
he claims entitled him to weekly benefits for 23
weeks.    The injury was a severe one, nearly resulting
in his death.    He was in the hospital for a month
unable to attend to any business.    After his return
home, he required the services of a physician for a
considerable time.    About May 4, 1914, plaintiff for
the first time remembered the existence of these poli-
cies, but could not find them and did not remember
their provisions.    On May 4, 1914, he addressed a
letter to J. M. Thompson, of the firm of J. M. Thomp-
son & Sons, agents of the defendant, telling of the in-
jury.    To this letter no reply was received.    On the
14th of July, 1914, plaintiff's attorney called at the
office of J. M. Thompson & Sons to learn what he could
about the matter and, if possible, to get a copy of the
policy.    He was given copies of the blank entitled
"Preliminary Notice of Injury."    This blank was filled
out, signed by the plaintiff, and sent to defendant's
agents on July 18, 1914.    The same is stamped: "Re-
ceived, Claim Dept. July 23, 1914."    It is also stamped:
"Home Office, Claim Dept. July 29, 1914, Travelers'
Insurance Co."    Copies of the policies were not fur-
nished by defendant on this occasion, and were not

obtained until December 14, 1914. It does not appear that J. M. Thompson & Sons were able to furnish them from records in their office. On August 4th, defendant's agent wrote the plaintiff inclosing blanks upon which to make affirmative proofs of disability. These were filled out and returned on November 9, 1914. Between August 4th and November 9th, plaintiff submitted to a physical examination by physicians for the defendant. During this interval a number of conferences were held between plaintiff's attorney and defendant's agents. At these conferences the principal matter talked of was the settlement of the claim. Various propositions for purposes of settlement were made by the defendant, all of which plaintiff rejected. This litigation followed.

After the plaintiff had put in his testimony, the court directed a verdict for the defendant on the ground that the plaintiff could not recover because he had failed to comply with the provisions of the policy. Later a motion for a new trial was overruled. We quote from the brief of counsel for appellant:

"The questions involved in this appeal may be conveniently grouped under three heads, and discussed in the following order: (1) Is plaintiff's recovery defeated by his failure to give 'immediate written notice' of the accident and injury? (2) Did defendant waive the defense that plaintiff could not recover because of his failure to furnish 'affirmative proof of * * * duration of disability' within seven months? Involved in this question is the right of the defendant to amend its plea so as to set up this defense. (3) Did the trial court err in denying plaintiff's motion for a new trial on the ground that plaintiff did not institute legal proceedings within one year from date of accident, or on the ground that defendant's agents were not authorized to waive any provision in the policy, none of these points having been raised at the trial or being in any way involved in the issues presented, plaintiff, consequently, not having had any op-

portunity to be heard thereon? Neither were said points presented or argued in the motion for new trial."

If the notice attached to the plea was not broad enough to make the defense of failure to make the affirmative proof required by the policy within seven months, the statute of amendments gave the trial judge the right to grant the amendment. Section 1, chap. 16, of the judicature act (Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12478).

The record discloses that the delay in bringing suit for more than a year is not properly presented as a defense, and it may be regarded as eliminated.

The decisive question is whether the defendant waived the defenses given it by the policy.

The policies contained the following:

"Immediate written notice, with full particulars and full name and address of insured, is to be given said company at Hartford, of any accident and injury for which claim is made. Unless affirmative proof of death, loss of limb or sight, or duration of disability, and of their being the approximate result of external, violent, and accidental means, is so furnished within seven months from the time of such accident, all claims based thereon shall be forfeited to the company. * * * No agent has power to waive any condition of this policy."

The following facts set forth in chronological order may be helpful:

November 21, 1913, plaintiff sustained an accident.

May 14, 1914, plaintiff wrote the defendant's agent relative to the accident.

July 18, 1914, the plaintiff mailed the defendant what he called a "preliminary notice" of the accident.

July 23, 1914, the above notice was received by defendant's agent; and on July 29, 1914, it was received by the home office.

August 4, 1914, blank for furnishing proofs was sent by defendant's agent to plaintiff.

November 9, 1914, proof of loss was sent by plaintiff to defendant's agent.

It will be observed that no notice was attempted to be given of the accident until nearly seven months after it happened, and no affirmative proof of the accident until more than eleven months had intervened. The reasons given for the delay are that plaintiff did not have the policies and could not find them, and did not remember their provisions. It is further said that the necessity for giving the notice and making the proofs earlier are waived by the conduct of the agent in having conferences with the attorney for the plaintiff chiefly relating to negotiating a settlement and by furnishing blanks upon which to make affirmative proof of the accident.

Counsel say, in substance: That Mr. Sweeney in good faith went to considerable expense and trouble in gathering the necessary data to prove his claim and in obtaining the certificate of the attending physician. That, we quote from the brief:

"Mr. Sweeney submitted to a physical examination by the physicians of the defendant company, and, if defendant intended to insist on the defense that proofs of disability were not furnished within the stated time, they had no right to demand that Mr. Sweeney go to the trouble and humiliation of submitting to a rigid physical examination by their own physicians. * * * Good faith and justice towards Mr. Sweeney required that defendant should have stated their defense before he submitted to the examination. Yet the first time that the defendant raised the defense that proof was not furnished within the required time was more than two years after this, when the lower court permitted defendant in the course of the trial to amend its plea so as to include this defense. This was the first notice that plaintiff had that defendant was insisting on any such defense."

It is also claimed Mr. Sweeney engaged the services of an attorney to assist in presenting his claim to

the company, who, without knowledge of the defense upon which they were relying, negotiated with defendant company for nearly six months, seeking to adjust and obtain a settlement of the claim; that much time with considerable expense to Mr. Sweeney resulted, and all this is evidence of a waiver, citing *Burnham* v. *Casualty Co.,* 117 Mich. 142, 154, 155 (75 N. W. 445); *Walter* v. *Insurance Co.,* 120 Mich. 35, 40 (78 N. W. 1011); *Crystal Ice Co.* v. *Surety Co.,* 159 Mich. 102, 107 (123 N. W. 619); *Cleaver* v. *Insurance Co.,* 71 Mich. 414, 421 (39 N. W. 571, 15 Am. St. Rep. 275). Also, 1 C. J. p. 480, for cases from other States.

It may be well at this point to see what the record discloses upon the subject of waiver. The attorney who represented the plaintiff was very frank in giving his testimony. Some of it is as follows:

"Between August 4th and November 10th, Mr. Young was to see me three or four times; five or six times. * * * At these conversations Mr. Young stated to me—I will not say how many times—I think it was more than once that he was up there, and took the matter up with me without intending to waive any defense that his company might have. * * * And he said, of course that in coming to see me he was saving what rights they had. Now I cannot recall just the language he used, but to the best of my recollection it was a statement in general terms, and that was about the extent to which it went. * * * He said at the time that his company made two objections to our claim: *First,* that notice of the injury was given too late. *Second,* that the company was of the opinion that the disability under which Mr. Sweeney suffered, or had suffered for a period of months following the injury, did not proceed from the injury, but from some trouble that must have existed previous to that time. * * * Regarding any reservations made by Mr. Young at these conferences, he stated that he was carrying on the conferences with me on the understanding that he did not waive any rights. It is not my recollection that he specified any defense

that he would not waive, but simply said he would not waive any rights, or intended to waive any right by talking with me in regard to the question."

The letter inclosing the claim blank read:

"DETROIT, MICH., Aug. 4, 1914.
"Re Policy O—6129.    Policy O—5462.
"MR. JOHN S. SWEENEY,
"R. F. D. No. 3, Grosse Pointe Farms, Michigan.

"*Dear Sir:* I have just received a preliminary notice of the injury which you sustained November 25, 1913. There has been a considerable delay in reporting this accident to us, however I am furnishing you herewith claim blank which is being done without prejudice to any of our rights under the policy. Within a day or two, I shall plan to see you personally and will be glad to render whatever assistance I can in presenting your claim for the consideration of my home office.

"Yours very truly,
"C. M. YOUNG, Asst. Adjuster."

And the letter of November 9th is even more explicit. The policy in explicit language stated, "No agent has power to waive any condition of this policy."

The evidence to which we have called attention shows the agent was diligent at all times in saying to the plaintiff or his representative that what he was doing must not be regarded as a waiver. The most that can be said of what was done is that if the plaintiff, knowing the attitude of the defendant, desired to enter into negotiations and furnish proofs, they would be presented for the consideration of the home office. See *Dull* v. *Insurance Co.*, 159 Mich. 678 (124 N. W. 533).

An examination of the cases cited by the plaintiff to which we have before referred show them to be distinguishable from the instant case. Here, where the policy required immediate notice of the accident, there was a delay of more than six months. This was too long as a matter of law. See Fuller Accident &

Employers' Liability Insurance, pp. 373, 374, and notes; *Foster* v. *Casualty Co.*, 99 Wis. 447 (75 N. W. 69, 40 L. R. A. 833); *Rooney* v. *Casualty Co.*, 184 Mass. 26 (67 N. E. 882); *Oakland Motor Co.* v. *Fidelity Co.*, 190 Mich. 74 (155 N. W. 729).

In the instant case more than ten months elapsed after the accident before affirmative proof thereof was made, though the policy provides for a forfeiture if such proof is not made within seven months.

In *Ermentrout* v. *Insurance Co.*, 63 Minn. 305 (65 N. W. 635, 30 L. R. A. 346, 56 Am. St. Rep. 481), in the course of a discussion of the provisions of a policy and of a waiver, the following is said:

"When the general managers received the proofs of loss in October, they wrote to plaintiffs, stating that they were in receipt of papers purporting to be proofs of loss, but adding: 'This is to notify you that we deny any liability under said policy on the part of this company.' They did not, however, return the proofs of loss.

"If the question was one of the sufficiency of the proofs of loss, we have no doubt the conduct of the general managers would have amounted to a waiver of any defect in them, either of form or substance. But this did not amount to any waiver of the prior failure of the plaintiffs to give notice of loss as required by the terms of the policy. It will be observed that by reason of this prior failure the policy was already dead when the proofs of loss were received; also, that in this letter the general managers did not place their denial of liability on any particular ground, but denied all liability generally. What would have been the effect, under the circumstances, of placing their denial of liability upon some specific ground other than the failure to give notice of loss we need not inquire. But there was nothing in the language or conduct of the general managers that could be construed as a waiver of plaintiff's prior failure to give notice of the loss, by reason of which the policy was already dead. If the policy had been still alive, and the plaintiff still had time within which to give notice, or to supply de-

fects in one already given, a different question would be presented and many of the numerous cases cited by plaintiff's counsel would have been in point.

"Our conclusion is that the court was right in dismissing the action, on the ground that plaintiffs had failed to give notice of loss as required by the policy."

In the opinion in *Moloney* v. *Insurance Co.,* 168 Mich. 269 (134 N. W. 6), Justice OSTRANDER, speaking for the court, used the following language:

"What is involved in the contention of plaintiffs is not a waiver by a principal or agent in the course of making a contract of a matter or thing which they have an undoubted power to waive—a waiver before the fact—but an estoppel which has the effect of reviving a liability, which, by the terms of an existing contract, is ended."

In *Travelers' Ins. Co.* v. *Nax,* 142 Fed. 657 (73 C. C. A. 649), it is said:

"The correspondence referred to, taken in connection with the undisputed facts of this case, has none of the essential characteristics of a waiver. Mere silence on the part of the insurer has in this case done the plaintiff below no injury. The company had already been discharged by the default, by reason of the stipulation of the insured in that regard. Calling his attention to the default, without an express waiver thereof, could not give to the insured or to the beneficiary any right or opportunity to cure the same. Such default has already worked its stipulated-for effect, and the discharge of the company is complete. It is not like silence of the insuring company with respect to a defect in the mere form of notice actually served, as is pointed out by the cases cited below. Silence as to such defect may be the inducement to the one who gives the notice to believe that he has complied with his duty, and that the notice is in proper form. The company promptly denied liability, and in its first letter said nothing as to the default of immediate written notice of the accident. If the notice given by the beneficiary were too late, nothing could have been done by her to remedy the defect. The whole

contention of the defendant in error, as to waiver, is founded upon the letter of September 17th, which we have before us. There is no other testimony as to conduct on the part of the plaintiff in error, or facts to be submitted to the jury. The court should, as a matter of law, have instructed the jury that this letter did not constitute a waiver of the rights of the insurance company to set up the failure to give immediate notice. *Cook* v. *Insurance Co.,* 181 Mass. 101 (62 N. E. 1049); *Gould* v. *Insurance Co.,* 134 Pa. 570 (19 Atl. 793, 19 Am. St. Rep. 717); *Travelers' Ins. Co.* v. *Myers & Co.,* 62 Ohio St. 529 (57 N. E. 458, 49 L. R. A. 760)."

In the instant case, before any act was done which it is claimed was a waiver, the policy by its express terms became forfeited. Here the agent was insisting all of the time that his acts must not be regarded as a waiver. The policy stated in clear language that he had no power to waive its conditions. To hold that what was done in this case may be regarded as a waiver would be to go farther than any of the authorities warrant.

Judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, STEERE, BROOKE, and FELLOWS, JJ., concurred.