### SPARE *v.* HOME MUT. INS. CO.

*(Circuit Court, D. Oregon. January 21, 1884.)*

1. AGENT ADVERSELY INTERESTED TO PRINCIPAL.

 The law will not allow a person to act as agent when he has an interest adverse to his principal; and therefore an agent of an insurance company to receive and transmit applications for insurance, when making an application therefor on his own property, directly or indirectly, for his own benefit, is acting for himself, and cannot be considered the agent of the insurance company.

2. SUIT TO REFORM A CONTRACT.

 The evidence necessary to support a bill to reform a contract must show certainly in what the mistake consists, and that it was mutual.

3. CASE IN JUDGMENT.

 The owners of a warehouse applied to an insurance company, of which they were agents, to receive and transmit applications for insurance for a policy on the same, as the property of their judgment creditor, and the company, knowing nothing to the contrary, issued the policy accordingly, and upon the destruction of the property by fire refused to pay the insurance, on the ground that the assured had no insurable interest therein, the assured having failed in an action on the policy to recover the insurance, on the ground that it did not appear but that his debt could be otherwise made out of the remaining property of his debtors,—8 Sawy. 618, [S. C. 15 FED. REP. 707,]—brought a

suit in equity to reform the policy, alleging that by mistake it was issued in the name of the creditor, as owner, when it should have been issued in the name of the debtor and for his benefit, in case of loss, *held*, that the evidence did not support the allegation of mistake, but, on the contrary, showed that the company was induced to issue the policy by the false representation of the owners and applicant, on account of which deception it was entitled to rescind the contract or treat it as null.

## Suit to Correct a Mistake in a Policy of Insurance.

*W. Scott Bebee* and *W. Cullen Gaston*, for plaintiff.

*Cyrus A. Dolph*, for defendant.

DEADY, J. This suit was commenced on April 28, 1883. It is brought by the plaintiff, a citizen of Oregon, against the defendant, a corporation formed under the law of California and doing business in this state, to reform and enforce a policy of insurance against fire, issued by the defendant on a warehouse in Cottage Grove, Oregon, for a period of one year from July 26, 1881, in the sum of $900, by correcting an alleged mistake therein, whereby said property appears to have been insured as the property of the plaintiff, when in fact it was agreed and understood that it should be insured as the property of Aaron and Ben Lurch, whose property it was and is, for the benefit of the plaintiff. The answer of the defendant denies the allegations of the bill, as to the alleged mistake, and avers that Lurch Bros. applied to it, as the agents of the defendant, to have the property insured as that of the plaintiff, and that it never was otherwise informed until after the loss and readjustment, when it refused to pay the same and offered to return the premium of $18.90, which was refused. The answer also contains a plea of limitation to the effect that the suit is barred by the stipulation in the policy, which provides that no suit shall be maintained thereon unless commenced within 12 months after the loss occurs. On August 13th this cause was before this court on a demurrer to the bill, when it was held that the stipulation in the policy limiting the right to sue thereon to the 12 months next after the loss did not commence to operate until the expiration of the 60 days thereby given to the insurer in which to make payment. 17 FED. REP. 568.

But now it is contended by the defendant that because it gave notice of its intention not to pay and the reason therefor, before the expiration of the 60 days, that the plaintiff was at liberty to commence his suit at once, and therefore the period of 12 months commenced to run from that time and expired more than a month before the commencement of this suit, namely, March 23, 1883. This is a plausible proposition, but I do not think it a sound one. The stipulation for a delay of 60 days after notice and proof of loss within which to make payment, being intended for the benefit of the defendant, doubtless it might waive it. And by giving notice on March 23d that it would not pay the loss, for the reason stated, it evidently did so. Thereafter the plaintiff may have been at liberty to sue without further delay. But I doubt if the defendant could by this means

compel the plaintiff to commence sooner than he otherwise would be required, or that the limitation of 12 months would thereby commence to run, as against the plaintiff, before the previous period of 60 days had expired.

The defendant also contends now, upon the proof, that the suit is barred, even allowing that the 12 months did not commence to run until after the expiration of the 60 days, because it appears that the notice and proof of loss were made as early after the fire as February 16th. The evidence in the case consists of the testimony of the plaintiffs, Aaron and Ben Lurch, the defendant's Oregon manager, Mr. George L. Story, and its traveling agent, D. B. Bush, and sundry exhibts, consisting of prior policies of insurance on this property and letters and documents relating thereto. From these proofs and the pleadings it satisfactorily appears that the property was destroyed by fire on February 14, 1882, and the loss adjusted by the defendant within a few days, and not exceeding a week, thereafter, at $900, and that on March 23d the defendant gave notice to the plaintiff that it declined to pay the loss because it had ascertained at and since the adjustment that the plaintiff had no interest in the property. Aaron and Ben Lurch both testify that they gave notice of the loss on the next day thereafter, and that within a week, the agent, Bush, was at Cottage Grove and adjusted the same. Bush swears that he was there and made the adjustment on February 16th, and as he speaks positively, and from written *memoranda*, this is probably the fact. The plaintiff does not appear to have had anything to do with the business personally, and knows nothing about it, except the offer to refund the premium in Lurch's store when he and they declined it— he saying that he had nothing to do with it.

But taking the statement most favorable to the plaintiff on this point, and assuming that a full week elapsed before the adjustment, which necessarily included notice and proof of loss, or waiver of the same by defendant, the period of 60 days commenced to run from and after February 21st, and expired on April 22d. Within the next 12 months this suit should have been commenced, whereas it was delayed until six days thereafter. The plaintiff claims, however, that the 60 days did not commence to run until Bush returned to Cottage Grove and notified the plaintiff on March 23d that the defendant would not pay the loss. But according to the language of the policy the 60 days is to be counted from the giving of notice and proof of loss, which was either made or waived before the adjustment, and not the refusal of payment. Indeed, this 60 days is manifestly given to the defendant for the very purpose of ascertaining and determining whether, admitting the loss or the sufficiency of the notice and proof thereof, it is bound to or will pay the claim of the assured. Nor is there any ground to claim that the matter was kept open from the first to the second visit of Bush to Cottage Grove for further proof in any particular. The proof of loss and ownership was made on the

first visit, and it was explicit and satisfactory. The plaintiff swore that he had no interest in the property, and the Lurch Bros. claimed to own it, which claim was supported by the county record of deeds. So it is quite plain that this suit is barred by lapse of time. It was commenced just six days too late. But if this were otherwise, the plaintiff is not entitled to the relief sought. I have examined the circumstances of the case as disclosed by the evidence, and they do not lead to the conclusion that there was any mistake made in the wording of this policy as alleged, but the contrary.

Briefly, it appears that in 1878 the Lurch Bros. were doing business at Cottage Grove as commission merchants when they failed, claiming to owe the plaintiff, who is a person of comparative wealth, living in the same place, nearly $5,000, with interest at 1 per centum per month, for which he obtained or had a judgment against them on December 9, 1878. Upon this he sold and purchased their store, but retained them as clerks and managers of the business for a year or two, when they succeeded in making a settlement with their creditors, and took the store back again, still owing him, as they allege, about $2,000, which was the value of the stock when returned to them. Aaron Lurch says that after the failure he told the plaintiff that, as he was a creditor of theirs, he would have this property insured for his benefit, without stating how or in what manner he expected to accomplish it, and the plaintiff says he assented to the suggestion, but it does not appear that he ever gave the matter any further attention, or that the Lurches were under any legal obligation to him to do so. On July 26, 1879, Aaron Lurch had the property insured in the Connecticut Fire Insurance Company, for one year from that date, for the sum of $900, as the property of the plaintiff, the application therefor, which was made by him in person, being in his handwriting, and signed by him, "A. H. Spare." In 1880, and before July 24th, the Lurch Bros. became the agents of the defendant at Cottage Grove to solicit and receive applications for fire insurance, and on that day they, as such agents, wrote to the manager of the defendant, at Portland, inclosing the said Connecticut policy on this property, as the property of the plaintiff, and asked to have it renewed in the Home Mutual; and that they might be allowed the proper commission therefor, which was done; and on July 14, 1881, on their written application, the policy was renewed with the defendant for another year. This was all the communication there ever was, until after the fire, between the defendant and any of these parties on this subject; and all the knowledge which the defendant or its manager or agents had, as to the ownership of this property, prior to the loss, was derived from, and in accordance with, the information thus obtained.

Upon this state of facts it is preposterous to claim that the plaintiff or his agents, the Lurches, ever intended or thought of insuring

this property as the property of the latter, for the benefit of the former, or otherwise than it was done.  It was insured for three years in succession, at the request of the Lurches, as the property of the plaintiff, and exactly as Aaron Lurch described it in the first application made and written by him in 1879.  What was the reason or purpose of this misrepresentation it is not material now to inquire. The Lurches may have honestly intended to insure this property for the benefit of the plaintiff, but were mistaken as to the proper method of so doing.  But in that case, the plaintiff must abide the result of their action, just as he would if they had refused or neglected to insure it at all.  He had no control over them in this respect,—they were not under any legal obligation to insure the property for him,— and in fact were acting for themselves.  But on the evidence, the whole case of the plaintiff is so vague, improbable, and contradictory that it is difficult to assign any reasonable and correct motive for their action.  But counsel for the plaintiff insist that the Lurches in procuring this policy to issue were acting as the agents of the defendant, and, therefore, their mistake, if any, is the mistake of the defendant, of which it cannot now take advantage.  When the alleged understanding between the plaintiff and the Lurches about this insurance was first had, and when it was first effected, the latter were not the agents of the defendants for any purpose, and what followed thereafter was in strict conformity with what had been done.  But it is not worth while to refine on this point.  The Lurches were evidently acting for themselves in this matter.  They were not under any legal obligation to have this property insured for the benefit of the plaintiff, and if they voluntarily did so, it was in fact for their own benefit rather than his.  In such case, if the property was destroyed by fire, they would so far pay their debt with the insurance, and the plaintiff would get nothing but what he was otherwise entitled to, and they might be otherwise able to pay.

Before commencing this suit this plaintiff brought an action at law in this court, on this policy, as it is, claiming an insurable interest in the property, as a judgment creditor of the Lurches, and, on a demurrer to the complaint, the court held that he had such an interest, but he could not recover unless it also appeared that the debtor had not other property sufficient to satisfy the judgment.  8 Sawy. 618; [S. C. 15 Fed. Rep. 707.]  The plaintiff did not amend his complaint so as to make this allegation, as he certainly would if he could; and the only inference is that he suffered no loss by the fire and was not benefited by the insurance.  But another sufficient answer to this claim is that the Lurches could not act as the agents of the defendants in this matter of the insurance of their own property for either the direct or indirect benefit of themselves.  The law has too much regard for the infirmity of human nature to allow a person to be subject to the temptation of acting as an agent in a matter in

which he has an interest adverse to his principal. The law, dealing with the average integrity and disinterestedness, wisely assumes that no man can faithfully serve two masters, whose interests are in conflict. Story, Ag. §§ 9, 10, 210, 211; 4 Kent, 438.

Assuming, then, that the Lurches were acting for themselves and not the defendant, because as a matter of fact it appears they were so acting, and because, as a matter of law, they could not act otherwise, what possible ground is there for the claim that this policy does not truly state the contract of the parties? None whatever. The Lurches applied in writing to have this property insured as that of the plaintiff, and the defendant knowing nothing to the contrary, accepted the application and issued the policy accordingly. The minds of the parties met on this proposition and no other. But it was essentially false; and as soon as the defendant ascertained that the Lurches had misrepresented the matter and attempted to procure an insurance on their own property, substantially for their own benefit, in the name of Spare, it refused to be bound by the contract, as it had a right to, both under the general law and the express stipulation of the policy, and offered to return the premium.

A party seeking to have a mistake in a written instrument corrected must show exactly in what the mistake consists. It must be a mutual mistake whereby both parties have, in fact, done what neither intended. And the evidence must be sufficient to prove this satisfactorily—to a moral certainty. *Brugger* v. *State Ins. Co.* 5 Sawy. 310. There was no mutual mistake here. There was, indeed, in the proper sense of the term, no mistake at all. The defendant was deceived by the deliberate misrepresentation of the Lurches as to the ownership of this property, whereby, according to the testimony of its manager, it was misled to accept a greater moral hazard than it was aware of or otherwise might have done. For this reason the defendant had a right to rescind the contract or treat it as null, independent of the clause in the policy making it void on that account.

There is still another point made by the plaintiff, and that is a subsequent waiver of the misrepresentation by the defendant. The Lurches testify that during the year 1881, and after this policy was issued, Bush was at Cottage Grove, and in conversation with them learned that the warehouse was not the property of Spare, but of the Lurches, whereupon he called their attention to the irregularity, but said, as they were the agents of the defendant, it might stand so until the next year, when it must be corrected. The time, circumstances, and details of this alleged conversation are very vaguely and conflictingly stated by the Lurches, while the whole story is flatly and explicitly contradicted by Bush, who also swears positively that he was was not at Cottage Grove from March 11, 1881, to February 16, 1882. Without stopping to consider the legal effect of such a conversation or understanding, or the power or authority of Bush to thus validate a void contract, it is sufficient to say that the burden

of proof is on the plaintiff to establish the fact, and that in my judgment it is not proven that the conversation ever occurred.

There must be a decree dismissing the bill for want of equity, and for costs for the defendant.