ZIMMERMANN *v.* DWELLING-HOUSE INSURANCE CO.

1. INSURANCE—POLICY ON AGENT'S PROPERTY—VALIDITY.

   A policy written by an agent for an insurance company upon his own property is not binding until it is approved by the company.

2. SAME—WAIVER.

   Authority from a general agent of an insurance company to a local agent to write a policy upon his own goods "in the usual way" does not obviate the necessity for an acceptance of the risk by the insurer, where none of the terms of the contract are agreed upon, although there be a custom among agents in the locality to insure their own property by merely making a memorandum of the risk, reporting it to the company, issuing a policy accordingly, and spreading it upon an insurance register.

Error to Saginaw; McKnight, J. Submitted June 5, 1896. Decided July 28, 1896.

*Assumpsit* by Frederick C. Zimmermann against the Dwelling-House Insurance Company upon a fire policy. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*William G. Gage,* for appellant.

*Hanchett & Hanchett,* for appellee.

MOORE, J. The plaintiff was a local agent of the defendant at Saginaw, and had been for several years prior to the date of the policy sued upon in this case; and, at the time the policy was issued, there was another local agent representing the defendant in the city. On May 15, 1893, plaintiff wrote a policy in the defendant company, insuring himself in the sum of $1,500 on his household goods, $250 on his barn, $100 on his horse, and $150

on his vehicles, robes, feed, etc.    Without notifying the company of this risk, he retained the policy, and the daily report, which is usually sent to the company, until May 20, 1893, claiming that his barn was not completed and ready for occupancy before that date.    On that date he sent the policy and daily report, by mail, to the home office of the defendant, at Boston, Mass.    These papers were received by the company on May 23, 1893.    Before sending the policy, the plaintiff had indorsed upon it the words, "Kindly approve and return."    The property covered by this policy was totally destroyed by a large fire on May 20, 1893, about 6:30 o'clock in the evening.    The fire started at about 4:30 p. m.    The plaintiff notified the company of the loss May 24th, when the general agent, W. J. Nichols, arrived in the city to look after the losses sustained by the company in this large fire.    No premium was ever paid or tendered by the plaintiff.    The policy was never accepted by the company, and was never delivered or returned to the plaintiff.    The company declined to pay the loss.    The plaintiff sued the defendant, and the judge directed a verdict in favor of defendant.

It is claimed by the appellant that he was authorized to write this policy by W. J. Nichols, the general agent of the defendant, during a conversation between them in the city of Saginaw, in February, 1893.    The conversation is described by the plaintiff as follows:

"I told him that I wanted to write a policy upon my own goods, and he said: 'Write it in the usual way.' That is the answer he gave me.    I think the conversation occurred at the Bancroft House.    It was on the east side of the river, anyway.    The subject of the conversation was about business generally, and about insurance business in general.    There wasn't anything said about placing a policy upon my property immediately."

The property which plaintiff proposed to write was not pointed out to Nichols, but the plaintiff told Nichols it would be his household goods and barn then building. On cross-examination, plaintiff testified:

"At the time I had my conversation with Nichols, in February, 1893, I told him that the property I wanted to insure was my household goods and a barn I was then building. I didn't tell him how much insurance I would take out. That is all there was to that conversation."

The policy he wrote was written May 15th.

It is claimed that this conversation between plaintiff and the general agent of the company, in which the general agent of the company used the expression, "Write it in the usual way," supplemented by the writing of the policy and evidence that it is the custom of insurance agents in Saginaw valley to insure their own property in the companies for which they are agents, in the same manner that they insure property of other persons,—*i. e.,* "that the custom and usual way, in the city of Saginaw and valley, of writing policies upon an agent's own property, at that time, was to make a memorandum of the risk; then he would make a daily report of the risk, and then a policy conforming to that, and spread it upon his insurance register,"—made a contract upon which the company would be liable, whether the policy was accepted at the home office or not. We cannot sustain that contention. When this conversation was held, the barn was not built. It was not finished until about the 15th of May. No statement was made as to the value of the property to be insured, or for how much it was to be insured, or what rate of premium was to be paid. No date had been fixed for the commencement or termination of the risk. Giving the most liberal construction possible to the language used, and what was done, it did not constitute a mutual and valid contract, binding upon both parties. *Michigan Pipe Co.* v. *Michigan Fire & Marine Ins. Co.,* 92 Mich. 482.

In its logical order, the next question for consideration is: Did the writing out of the daily report and the policy, and its entry on the policy register, constitute a contract before the policy was approved by the company? It is

elementary law that an agent must not be personally interested adversely to his principal. *Green* v. *Knoch*, 92 Mich. 26; *Pittsburgh, etc., Iron Co.* v. *Kirkpatrick*, Id. 252. An agent for receiving applications ceases to be an agent so long as he acts in a matter in which his personal interest is concerned. If he applies for insurance on his own property, as to that property he is no agent of the company. He cannot, by the familiar rule of law, as agent, represent antagonistic interests. 1 May, Ins. § 125, and cases cited. It follows reasonably, we think, that, if the agent cannot act for the company so as to bind it where he himself is an applicant for insurance, the company would not be bound until his act in writing the policy was approved by it. The record shows that, while the policy was written May 15th, for some reason it was not posted for mailing until May 20th, and was not received until May 23d, three days after the loss occurred. The policy never was approved by the company, and no contract creating liability was made.

The judgment is affirmed.

The other Justices concurred.