HOWARD v. HOWARD.

CANCELLATION OF INSTRUMENTS—DEEDS—COMPETENCY OF GRANTOR
—SUFFICIENCY OF EVIDENCE.

> On a bill for the cancellation of a deed evidence *held*, suffi-
> cient to show that plaintiff was competent, notwithstand-
> ing her age, at the time she executed such deed, to exe-
> cute it.

Appeal from Clinton; Searl, J.  Submitted April 6,
1916.  Docket No. 26.)  Decided May 31, 1917.

Bill by Lucinda Howard, by her guardian, Jefferson
E. Eddy, against Dewey S. Howard and Eunice E.
Howard, minors, to set aside a deed.  From a decree
for plaintiff, defendants appeal.  Reversed, and bill
dismissed.

*Walbridge & Kelley* (*E. H. Lyon;* of counsel), for
plaintiff.

*William M. Smith,* for defendants.

BROOKE, J.  This case was argued, submitted, and
assigned at the April term, 1916, and was reassigned
at the April term, 1917.  The bill of complaint was
filed January 3, 1914, by Lucinda Howard, as plain-
tiff, by her guardian, Jefferson E. Eddy, against
Dewey S. Howard and Eunice E. Howard, plaintiff's
minor grandchildren, children of her deceased son,
John E.  At the time the bill was filed the plaintiff
was 81 years of age, and it is alleged therein that
for the last 8 years and upwards "she has been weak
and feeble both mentally and physically."

The bill prays for a decree canceling a certain deed,
bearing date June 24, 1910, and recorded June 30,
1910, by the terms of which the plaintiff deeded to
her grandchildren a farm of 80 acres.  The deed con-
tains the following provision:

"This deed is given in family settlement, second

parties being the grandchildren of the first party, said first party being the survivor under the joint deed of said lands to herself and husband. She reserves to herself the right to use, occupation, and control of said premises during the term of the natural life of first party."

It is charged in the bill that at the time of the execution and delivery of said deed the plaintiff had no other property, and that the life estate preserved therein was insufficient to provide her actual and necessary expenses during the remainder of her life. It is further charged therein that at the time of the execution of said deed said plaintiff was mentally incompetent to make, execute, and deliver the same. Defendants by their guardian answered, denying the material averments of the bill, and by way of cross-bill assert that they are entitled to a dismissal of the plaintiff's bill, not only upon the ground of the validity of the deed made by the plaintiff on June 24, 1910, but likewise by virtue of a deed made by the plaintiff and her husband, Stephen M. Howard, November 28, 1906, by the terms of which the same lands as those described in the deed of June 24, 1910, were conveyed by said plaintiff and her husband to said defendants, subject to a life estate therein to their father, John E. Howard. That deed contained the following provision:

"This deed to remain in escrow until after the death of the survivor of the above-named grantors."

After a hearing upon proofs taken in open court a decree was rendered by the court below setting aside both the deed of June 24, 1910, and that of November 28, 1906. From this decree defendants appeal.

It appears from the record that plaintiff and her husband, Stephen M. Howard, had occupied the farm in question for a great many years as a homestead. They had two children, John E., the father of defendants, and Eliza, who married Samuel Leonard in 1869.

On February 24, 1904, Stephen M. Howard, then holding complete title in fee to the lands in question, caused the same by appropriate conveyances to be placed in himself and wife as tenants by the entireties. He owned at this time besides the farm in question a house and lot in the village of Grand Ledge valued at about $1,000. At one time he and his wife, the plaintiff, made a deed of the farm to the son, John E., and a deed of the house and lot in Grand Ledge to the daughter, Eliza. These deeds were placed in the custody of Clark & Latting, attorneys, with instructions that they should not be recorded until after the death of both grantors. On November 28, 1906, the plaintiff and her husband went to Clark & Latting and canceled said deeds, and there executed a deed by the terms of which the life estate of the farm went to the son, John E., and the fee to the defendants herein. That was the condition of title to the farm in question at the time of the death of Stephen M. Howard, which occurred on the 10th day of October, 1907. About a year and a half later, and on February 19, 1909, plaintiff made and executed a will by the terms of which she divided the household effects between her grandchildren and her daughter Eliza, and divided the farm in question equally, giving one-half to her daughter Eliza, and one-half to defendants herein. Mr. Latting, the scrivener who prepared said will, was a member of the firm of Clark & Latting, with whom the deed of November 28, 1906, had been deposited. He testified that he advised the plaintiff that he had great misgivings as to her right, her husband, Stephen M. Howard, then being dead, to make a disposition of the real estate covered by the deed. She at that time insisted, however, and the will was executed There- after Mr. Latting wrote across the face of said deed the word "Canceled," and permitted the deed to be taken to plaintiff, in whose presence the following memorandum was written upon the deed:

"On account of my son's death I have canceled this deed and it shall be of no effect,"

—which memorandum was signed by the plaintiff, and the deed was returned to the custody of Mr. Latting. John E. Howard, the son, had died in May, 1908. On June 16, 1909, less than four months after the execution of said will, plaintiff secured the same from Mr. Latting, in whose possession it had remained after its execution, and destroyed it, and on June 24, 1910, about a year later, executed the deed for the cancellation of which the bill in this case is filed.

The record shows that during the years 1908, 1909, and 1910 one Frank Shadduck had been aiding the plaintiff in the conduct of her affairs. He was a Free Mason, as was likewise Stephen M. Howard, in his lifetime, and his attentions and assistance to this old lady, the plaintiff, seem to have been prompted by a desire to render such fraternal aid as was possible. Referring to the making of the last deed, this witness testified:

"She said she wanted to deed that property again to Dewey and Eunice. I said, 'Mrs. Howard, I don't think it is necessary.' 'Well, well,' she says, 'you know they scared me, and they made me make out a paper I did not want to, and they made me make out a paper,' and she says, 'Don't you know I went over and got that paper, and I burned it up,' and she says, 'I don't know, now; maybe I ought to deed that over again. I want that property left just as Pa and I had it.' I says, 'if you are sure that is the case,' I says, 'I will take the matter up with the judge of probate.' I took the matter up with Judge Merrill: I think perhaps she and I had three or four different conversations in regard to the matter, teasing me to see it was done before something happened, or she might die. I finally came to Judge Merrill and had a talk with him; Judge Merrill drew that paper after talking with me; that paper is dated the 24th day of June, 1910, and is in the judge's handwriting. That is the time it was drawn. The judge gave it to me. I took it to Quincy.

L. Taylor. The certificate on the deed is the 28th day of June. That is the day I went to see Mr. Taylor by request of Mrs. Howard. I took her there and she asked Mr. Taylor to read the deed. I told her the deed was in Mr. Taylor's hands. I had left the deed with him before that, before I went for Mrs. Howard that day at Quincy L. Taylor's. When I and Mrs. Howard were there he read the deed by her request, and she re-read it. She says, 'That is just as I want the property.' I asked Mrs. Howard if she was sure that was just what she wanted, and she repeated over several times, 'Why, yes; yes; yes.' She says, 'I told you all the time that is just the way I wanted it.' She says we had better have it recorded so that they could not anybody get it away from her. We were at Taylor's on that occasion perhaps half an hour. It might have been an hour. It was in the daytime. We left the deed with Mr. Taylor to be sent and recorded. Mrs. Howard ordered Mr. Taylor to have the deed sent back to me. She gave that direction that day to Mr. Taylor in my presence, and the deed was returned from the register of deeds' office to me."

Mrs. Quincy L. Taylor, who was present at the time of the execution of that deed, testified as follows:

"I should think they were there from half to three-quarters of an hour. The deed was written out and she had to sign it before Mr. Taylor and Mr. Taylor read the deed to her. Mr. Shadduck he brought her there, Mr. Frank Shadduck; and he was very particular that she should understand just exactly what she was doing, so Mr. Taylor read the deed all over to her, and there was some little business particulars of it that she didn't understand, and he re-read it, and then he said to her, 'Are you doing this, Mrs. Howard, of your own free will?' and she said, 'Yes, sir; or else I should not do it.' I think the deed was written out before she came; I think it was. Of course, I didn't read the deed, but I heard it read. I sat there and heard it read, and she talked about what property she wanted it given to two grandchildren, as I remember it, and that the deed was made out to those children, as I understood it."

The decree was entered on February 9, 1915, and

the plaintiff died October 18, 1915. It is clear from a perusal of this record that the effort to set aside the deed of June 28, 1910, was made, not in the interest of the plaintiff, but for the benefit of her daughter, Eliza, and at the instance of Samuel Leonard, her husband, who guaranteed the costs of the proceedings to the old lady's guardian.

The learned judge who heard the case in the court below said:

"If this case were to be determined entirely on the proposition as to whether Mrs. Howard was or was not competent to transact ordinary business when these deeds were made, there is room for the argument made herein that a preponderance of the evidence shows that she was competent, at least at times, but I do not deem it necessary to decide that question."

We have read this record with care, and are of opinion that the competency of this old lady plaintiff on June 24, 1910, to execute the deed in question was established by an overwhelming preponderance of the evidence. It is true that 4½ years later, when the case was heard, her mental condition had so far deteriorated as to make it impossible for her testimony to be taken. The learned circuit judge in his opinion further said:

"This old lady at and before the time this last deed was made had become old and infirm, peculiar and erratic. She was not then insane, but, in view of what happened to her mind later, she was then verging toward insanity. * * *

"At the time this deed was made she had no advice from any attorney as to her rights, nor was she advised by any one, unless possibly by Shadduck, who was then acting as guardian of these infant defendants. However honest Mr. Shadduck may have been, he could not in law act in the interest of his wards and at the same time act for Mrs. Howard. Even where no fraud is shown the law looks with suspicion on such transactions. *Green* v. *Knoch,* 92 Mich. 26 (52 N. W. 80); *Zimmermann* v. *Insurance Co.,* 110 Mich. 399 (68 N. W. 215, 33 L. R. A. 698).

"The deed was drawn by Judge Merrill, but he did not see Mrs. Howard, and he must have received all his instructions from Shadduck. It is hardly conceivable that any attorney of standing would have advised Mrs. Howard to enter into such an arrangement, and it is quite probable that, had she applied to Judge Merrill, he would have told her not to do so; at least, he would have advised her that she was parting finally with all the property she had except the use thereof, and that she must pay all taxes as life tenant, and that if she should become so infirm before her death as to need personal attention before her death, she would have no way of securing the same. None of these things were told Mrs. Howard, nor was she cautioned in any way against this exceedingly unwise move on her part. From her previous experience she undoubtedly thought she had the right to cancel this deed the same as the others. She was not mentally strong at the time this deed was made. She probably paid little attention to the reading of the deed by the justice. At any rate she parted with valuable property as a gift without fully understanding her legal rights and without realizing that she might come to want because of her act.

"I find that the proceeds of the farm are not sufficient to care for this unfortunate old lady, and, under all the evidence here, this deed should be set aside and held for naught, and the title to the property restored to her."

With these conclusions we are not in accord. While it may be true, as stated by the circuit judge, that at the time the deed was executed in 1910 the plaintiff was "then verging toward insanity," it would in the same sense be true to say that she was verging toward insanity ten years before that time. She was neither insane nor incompetent at the time said deed was executed. While Mr. Shadduck, who had the deed drafted by Judge Merrill at her request, was not a lawyer, it is entirely apparent from this record that he was a disinterested and fair witness, and that he acted in that behalf solely upon instructions of plaintiff. She knew exactly what she wanted to do, and

she took the necessary steps to carry out her instructions. There is apparently no evidence in the record to justify the conclusion of the court below that:

"She undoubtedly thought she had the right to cancel this deed the same as the others. * * * She probably paid little attention to the reading of the deed by the justice."

Such evidence as the record contains distinctly negatives both these conclusions. The deed was read in her presence, and she repeatedly expressed herself to the effect that the disposition of the property made thereby was just as she desired it. She herself insisted that the deed be placed of record. This fact, in our opinion, negatives the conclusion of the trial court that she thought she had a right to cancel it the same as the others.

The conclusion of the court below that "the proceeds of the farm are not sufficient to care for this unfortunate lady, under all the evidence here," is open to question. Fred Howe, one of plaintiff's witnesses, testified that the farm was a fair 80, worth $5,000, and that:

"*A.* It certainly would in my judgment, 80 acres of land; 40 acres of land ought to take care of any person.

"*Q.* What do you say as to whether you could take that farm and do that?

"*A.* I think I could.

"*Q.* Suppose you or any other man was guardian of that woman, take that farm and have it worked on shares or rent it and have it handled in some proper way, whether or not that farm will maintain and take care of that woman and pay the man who looks after it a reasonable compensation?

"*A.* It certainly will.

"*Q.* Is there any reason on earth why it should not?

"*A.* I cannot see why 80, one-half of it would not take care of one person; it is a pretty good 80, an average 80, not in the best of cultivation, but land that could be made good quick."

There was other evidence in the case to the effect that the proceeds of the farm would not be adequate to provide the plaintiff with a constant individual attendant, but, even if the conclusion of the learned trial judge is upon this point sound, it is not controlling of the issue under the testimony in this case. We find that the disposition of the farm provided for in the 1910 deed was but a reassertion of plaintiff's settled intention, as evidenced by the deed executed by herself and husband in 1906. It is asserted by counsel for defendants that defendants' title may likewise be rested upon the validity of the deed of 1906. Having concluded that their title under the 1910 deed is unassailable, it becomes unnecessary to pass upon the validity of the 1906 conveyance.

The decree of the court below is reversed, and a decree will be entered in this court dismissing plaintiff's bill, with costs.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred. PERSON, J., took no part in the decision.