## WILLIAM CLIFFORD, Appellant, v. FIREMEN'S INSURANCE COMPANY, a Corporation, Respondent.

(224 N. W. 891.)

Opinion filed April 8, 1929.

*F. J. Funke,* for appellant.

*R. H. Bosard* (*Silber, Isaacs, Silber, & Wooley* of counsel), for respondent.

BURR, J. During the month of January 1927 the plaintiff was the agent of the defendant for the territory of Mohall and vicinity. He and one J. E. Bryans used the same offices and it was customary for plaintiff's stenographer and Mr. Bryans to assist in issuing policies by signing plaintiff's name thereto as agent. The plaintiff was in St. Paul, Minnesota, and on the 22nd wrote Mr. Bryans, among other things, "Check up on the insurance on my house and furniture. . . . What I want on the furniture is at least $2,000 and I should have about $500 on the garage and from $3,000 to $5,000 on the house. If there is not this amount better have a policy made at once." It appears that in 1926 plaintiff had written a policy of insurance on his house in this same company, which policy had been approved by the defendant, but no payment has been made thereunder. On the 25th Mr. Bryans wrote policy No. 12 in defendant's company for $500 on the house, and $1,000 on the furniture, signing plaintiff's name as agent, which policy went into effect at noon of that day, and was for the term of three years. There was at that time other insurance on the property to the amount of $2,500 on the house and $1,000 on the furniture. It

is the claim of the plaintiff that immediately upon issuing this policy, Mr. Bryans mailed the required daily report enclosing a copy of the policy issued, but this copy shows the term of insurance to be but one year. At 6 p. m. on that day the house was totally destroyed by fire with all of the furniture. Notice of the policy and the loss was sent to the defendant company immediately by J. E. Bryans and this was the first intimation the company received of the issuance of the policy and of liability thereunder. An insurance policy had been issued by the defendant on a neighboring dwelling which dwelling was burned in the same fire and the loss on this building was adjusted and paid, the adjustment being made by one C. E. Allen, representative of Western Adjustment Co. in accordance with the usual custom of the defendant in employing such companies. No premium was remitted to the company at that time. In accordance with the custom of the company in dealing with its agents the latter, on the 5th of the following month, report showing business done, and later a bill for the amount of the business reported is sent to the agent. The defendant rendered an account to the plaintiff for premiums due for the January business. There was but one policy issued that month, the policy in question. The plaintiff on the 26th of February remitted the amount of the premium, less the commission. This was received by the company's office, passed through the regular channels, was credited to the plaintiff, but, later, was tendered to the plaintiff.

The defendant ignored all notice of loss and plaintiff brought action in May 1927 to recover upon the policy.

The company defends the action on the ground that the plaintiff, its agent, had no authority whatever to issue any policy in the defendant company in his own favor, that it was not authorized, "that no proper report was ever made to the company of the issuance of such purported policy, and that the said purported policy in the issuance thereof has never been ratified by the company, that any and all moneys sent to or received by the defendant company for the premium for such purported insurance policy have been tendered back to the plaintiff, and such tender made good by a deposit, all of which the plaintiff has full notice."

At the close of the case both sides moved for a directed verdict. The trial court made findings of fact and conclusions of law in favor of

the defendant and entered an order ·dismissing the case. Judgment was accordingly entered and plaintiff appeals, setting forth six ·specifications of error.

These specifications involve two points—had the plaintiff the right to issue a policy of insurance in defendant company to himself; and, did the defendant by receiving the premium and by the delay in returning it ratify the issuance of the policy or estop itself from· claiming the policy was not in full force and effect?

The trial court found "that the defendant never in any manner ratified the issuance of the policy sued upon or admitted its·liability thereunder." This finding is sustained by the evidence. ·Without determining whether plaintiff, as agent for the company, could give authority to Mr. Bryans to issue policies and sign the agent's name thereto, it is clear an agent may not issue a policy to himself without the consent of his principal no matter how broadly the terms of his authority may be expressed. Section 6343 of the Compiled Laws says:· "An authority expressed in general terms, however broad, does not · authorize an agent: ·

"1. ———————

"2. ———————

"3. To do any act which a trustee is forbidden to do by· article 2 of chapter 70 of this Code." Section 6283, contained in said article, says:

"Neither a· trustee, nor any of his agents, may take part in· any transaction concerning the trust in which he or anyone for whom he acts as agent has an interest, present or contingent, adverse to that of his beneficiary except as follows:

"1. When the beneficiary, having capacity to contract, with a full knowledge of the motives of the trustee and of all other facts concerning the transaction which might affect his own decision, and without the use of any influence on the part of the trustee, permits him to do so."

"2. ———————

"3. ———————"

Hence the policy was of no validity until submitted to and approved by the company. This was never done. It is true, a copy of the policy (not an accurate copy for the term of insurance is not stated correctly)

was sent to the company in the daily report on business; but there is not a word of testimony showing the company approved the policy—in fact the testimony shows the company ignored it and did not ratify it. One mail per day leaves Mohall for the east, leaving in the forenoon. The policy was issued after the mail left on the 25th of January. Hence the loss occurred before the policy ever left Mohall. The notice of the day's business and the notice of loss left on the same mail and were received by this company at the same time. It cannot be claimed the company prevented the plaintiff from getting insurance in any other company as it knew nothing about the policy until after the loss occurred.

"A policy of insurance, issued by an agent of the insurance company to himself, without the knowledge or consent of the company, . . . is void," (Wildberger v. Hartford F. Ins. Co. 72 Miss. 338, 28 L.R.A. 220, 48 Am. St. Rep. 558, 17 So. 282), and, "where he writes a policy on his own property, it must be approved by the company before it constitutes a contract;" (Zimmermann v. Dwelling-House Ins. Co. 110 Mich. 399, 33 L.R.A. 698, 68 N. W. 215), as "such agent is acting for himself, and cannot be considered the agent of the insurance company." (Spare v. Home Mut. Ins. Co. (C. C.) 9 Sawy. 148, 19 Fed. 14.)

It is the claim of the plaintiff however that the defendant by billing plaintiff for the premiums due under his January report ratified the issuance of the policy because that this bill included a demand for the premium upon this policy issued. The notice of loss was a letter written by Mr. Bryans to the company on January 26th (Ex. 6) and it contains this statement:

"There was a total loss under policy #12 to the house and contents of Wm. Clifford, issued in your company on January 25th, 1927, $1,500.

This property was destroyed last night about 7:30 or 8:00 P. M. by fire caused by explosion, and this policy was just written on this property the same day about noon, that the fire occurred."

The testimony does not inform us of the contents of the daily report but a copy of the policy had been sent and the statement issued by the defendant to the plaintiff as agent specifies the premium due on policy #12 but does not give the name of the insured. The tes-

timony of the defendant shows that the daily reports are filed with a certain department, proper entries made, and the accountants, during each month, bill the agents for the premiums due on the business reported. One of the defendant's employees, the assistant chief accountant, testified that it was the duty of the agent to report on the 5th of each month the amount of business transacted the previous month; that the amount of premium is payable 45 days after the issuance of the policy. He testifies that no report was received from Mr. Clifford on the 5th of February, and after the remittance was received draft being dated February 26, 1927;

"I checked the matter up with the other departments and after checking it up and ascertaining the situation, the sum of $14.58 covering the money that was sent in to the company in payment of the net premium on policy #12 as shown by defendant's exhibit 1 for identification was sent to Robert H. Bosard our attorney at Minot, North Dakota, to be returned to Mr. Clifford."

The evidence shows that the defendant refused to accept this money when offered and thereupon it was deposited in a bank and notice of deposit given to him. This tender and notice of deposit was made on September 16, 1927 being before the amended answer was served. It is the contention of the plaintiff that there was such delay in the return of the premium that defendant cannot now be heard to say it had not ratified the policy. However, it is shown the delay was occasioned by the nature of the office work, and in any event the plaintiff was not in any way injured. He did not lose any rights. He was not put to any expense, nor misled by this means into believing the policy had been approved. There is nothing arising from the delay to intimate the company ever recognized the policy as a liability.

It is claimed by the plaintiff that the defendant sent an adjuster and this adjuster received a copy of the policy and an inventory of the described property and that this is additional proof of ratification. The testimony shows it was the custom of the company to have agents of adjustment companies look after the matter of losses, that defendant had insured a neighboring house and an adjuster was sent to adjust that loss. There is no proof that this adjuster was authorized in any way to take up the question of plaintiff's loss. It is true his attention was called to it when in Mohall and he did get a copy of the policy

but these acts were not authorized by the defendant. The trial court found that "On September 16, 1927, on defendant's discovery that the premium on the Clifford policy had been received by it, it made legal tender of such premium."

To make this finding the court, of necessity, had to determine whether the premium was returned within a reasonable time after the company knew of the receipt. Where business is systematized and passes through separate channels it cannot be expected that one small item will attract attention immediately. Scores of clerks know nothing of what the item represents. The testimony shows that when word came from the claim department of defendant the matter was referred to other departments and eventually to the attention of this assistant chief accountant. Then the premium was returned.

The trial court heard the evidence and passed upon the facts, finding for the defendant. There is ample evidence to sustain the findings and so the judgment is affirmed.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.