CONTRACT & INVESTMENT CO. *v.* HOME INS. CO. OF NEW YORK.

1. INSURANCE—FIRE—CHANGE OF INTEREST, TITLE OR POSSESSION—
   NOTICE TO INSURER—COURSE OF PRACTICE—ESTOPPEL.
   Course of practice whereby owner of several hundred pieces of
      real estate notified agency of defendants, insurers under fire
      insurance policies, on first of month following month in which
      change of interest or possession occurred *held*, ineffective to
      work estoppel of insurers to deny liability for fire loss result-
      ing from operation of an alcohol distillery installed after
      plaintiff had sold property on land contract and delivered pos-
      session, but before first of following month or notice to the
      agency had been given, where testimony shows that date of
      notice to insurer's agency and not date of change of interest
      or possession was the date of change indorsed on the policy in
      the course of practice involved.

2. Same—Fire—Change of Interest, Title or Possession—Indorsement on Policy—Sale on Land Contract.

> Sale of property under land contract, accompanied by change of possession, *held,* such a material change of interest of insured as to require immediate notice thereof to insurer under fire insurance policy to hold it liable for fire loss occurring after such change where policy declares it would be void unless written indorsement of change of interest, title or possession were made.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 5, 1938. (Docket No. 25, Calendar No. 39,711.) Decided February 24, 1938.

Action by Contract & Investment Company, a Michigan corporation, against Home Insurance Company of New York, and Hudson Insurance Company, New York corporations, for sums due on a fire insurance policy. Judgment for defendants. Plaintiff appeals. Affirmed.

*Yerkes, Goddard & McClintock* (*William R. Rudell* and *Shirley T. Johnson,* of counsel), for plaintiff.

*Walters & Head,* for defendants.

McAllister, J. Plaintiff realty company was the owner of several hundred pieces of real estate and carried numerous policies of fire insurance on its properties with defendant insurance companies. The Parker-Davis Insurance Agency was the agency through which plaintiff placed its policies.

On the 15th day of December, 1932, the agency issued a fire insurance policy effective for three years on a certain frame dwelling house owned by the plaintiff. The policy included the provision that it should be void "unless otherwise provided by agreement in writing added hereto * * * if any

change, other than by death of an insured, takes place in the interest (except increase of insured's interest), title or possession of the subject of insurance (except change of occupants without increase of hazard)."

On June 4, 1935, plaintiff sold the house, which was insured under this policy, on a land contract and the purchasers took immediate possession. Twenty days after the execution of the land contract, on June 24, 1935, a fire occurred in the insured premises caused by the operation of an alcohol distillery which had been installed after the change of possession. Neither defendant companies nor the agent were ever notified from the date of the execution of the land contract and change of possession of the premises to the date of the fire, of any such change of interest. Plaintiff filed proof of loss and defendant denied liability.

Plaintiff claimed that there had grown up a course of practice with defendant companies and their agent that whenever there was a change in interest and possession of its properties so insured, plaintiff would notify the insurance agency the first of the following month that such change in interest and possession had taken place the previous month; that because of such procedure, consented to over a long period of time by the agent company, and covering many different pieces of property in former transactions, a course of conduct had been followed which led the insured to believe that such policies would not be void for lack of immediate notice of change of interest; that because such indorsement and consent to change of possession had always been agreed to by defendants, and because of the nature of the authority given by defendants to their agent and the agent's knowledge of the circumstances, defendant

insurance companies are estopped from forfeiting the contract in this case.

On the trial the court held that there was no proof of such course of conduct entered upon or consented to by defendants' agent or by defendants that would result in a waiver of the conditions of the policy; that no principle of estoppel was applicable to the case, and that by the terms of the policy the insurance company was not liable because it had not been notified of the change in interest and possession and increase of hazard in the use of the premises; and accordingly entered a judgment of no cause of action.

The question before us is whether there was any course of conduct indulged in or consented to by defendants' agent which would lead plaintiff to believe that it was unnecessary to notify the agency of a change of interest or possession until the first of the month following such change. The plaintiff contends that if such facts are proved there would result a waiver of these provisions of the contract of insurance and that defendants would be estopped from insisting upon adherence to the terms of the policy. It therefore becomes necessary to examine the practice of plaintiff and defendants' insurance agent regarding notification of change of interest and consent of defendants to such change in their previous transactions.

On the trial, plaintiff's office manager testified that the procedure, which was followed in such cases, was that whenever plaintiff sold property or foreclosed or cancelled a vendee's interest, all of the accumulations of each month's sales and cancellations for that particular month were placed in a file and afterward given to an employee, who in turn notified the insurance agent to have the proper indorsement of change

of interest placed on the policies. He testified as
follows:

"*Q.* To your knowledge, your office never called
up the Parker-Davis Agency immediately upon the
sale of a piece of property?
"*A.* No.
"*Q.* Always followed this procedure of notifying
them the subsequent month?
"*A.* Yes."

Plaintiff's employee in charge of such notifications
testified that plaintiff's bookkeeper at the beginning
of the month would give her all changes for the
month previous to this date. She testified that she
would notify the insurance agency of what indorse-
ments they wanted, and that the regular procedure
was to notify the agency once a month. "Well,
around the first of the month, she (plaintiff's book-
keeper) would give me these slips stating each indi-
vidual new contract or cancellation. I would take
care of it as soon as I could get to it."

An officer of the insurance agency was sworn by
plaintiff and testified to the following as to the pro-
cedure followed in making such indorsements:

"From time to time the Title & Trust Company
would write us a letter, usually about once a month,
possibly twice a month, and in that letter they would
set forth the various changes affecting the various
policies that we had in force for them. * * * This
letter would cover changes such as new contract pur-
chasers on the properties, or satisfaction of inter-
ests of the Title & Trust Company where they would
have sold property to more than one party and had
no further interest in the property; would cover any
changes of any nature affecting the title interest of
the property; and this letter would usually cover the
transaction. * * * We would proceed to issue the

indorsements effective as of the date of the letter,
setting forth the changes as outlined in the letter.
\* \* \*

"*The Court*: What would you do upon receipt of
the letter?

"*A.* An indorsement, making an indorsement ef-
fective as of the date of the letter, although that
would not necessarily mean that was the date that
the transaction was consummated. For example, we
may receive a letter dated May 25th, asking us to
indorse the additional interest of a contract pur-
chaser on a property where, as a matter of fact, the
contract purchaser's interest may have attached on
the 5th day of that month, or 20 days prior, but all
we would have to go by was the date of the letter,
and we would issue an indorsement effective as of
the date of the letter."

It therefore appears that whenever plaintiff re-
ceived indorsements and consent of change of inter-
est from the insurance agent, it had notice that such
change of interest was agreed to only as of the date
on which plaintiff had notified the agent. Because
of the fact that defendants' agent invariably limited
its indorsements consenting to change of interest and
possession "*effective as of the date of the letter*"
which notified it of such change, neither the insur-
ance agent nor defendant companies can be said to
have led plaintiff to believe that such change in the
terms of the policy would be considered to be effec-
tive at any time prior to receiving such notifications.
In this case the change of interest occurred on
June 4, 1935. Twenty days later the fire causing the
damage took place. Neither defendants' agent nor
defendants were ever notified of any change of inter-
est prior to the fire.

Appellant calls our attention to the case of *Zeitler*
v. *Concordia Fire Insurance Co.,* 169 Mich. 555, in

which this Court held, under an insurance policy similar to the one before us, that a change of interest without the agreement of the insurer did not void the policy.

In that case the policy was issued to the estate of a deceased person on May 5, 1910, during probate proceedings. Before this policy was issued, and on May 2, 1910, the administrator obtained from the probate court a license to sell the property. On June 2, 1910, about a month after the policy was issued, the administrator entered into a contract for the sale of the property, giving a land contract in the usual form which was executed and delivered on the day stated, the plaintiff as administrator agreeing to sell to the purchaser for a certain down payment and other stipulated payments; the entire sum stipulated, to be paid on or before June 1, 1911. Possession of the premises was not to be given to the purchaser until December 1, 1910. The sale was confirmed by the probate court on June 13th and the fire which destroyed the insured property occurred October 9, 1910. Subsequent to the fire the purchaser made full payment on the contract and received deed from administrator on December 5, 1910. In discussing these circumstances the court said:

"The administrator did not own the property, and had no interest in it except to perform his official duty in that connection, as an agency of the probate court. Neither the actual owner of the property or creditors of the estate are named in the policy or were known to the insurers, so far as disclosed. The business was done with the administrator, necessarily known to be a temporary official in charge while the property was going through the probate court. * * * Although there is some conflict upon the question, the weight of authority recognizes the general rule that, where possession and control of

the property and an insurable interest are retained by the insured, an executory agreement for its sale does not so violate the spirit of such conditions as to render the policy void. * * * In fire insurance the moral hazard, as well as the physical, is recognized as an important factor. The legitimate object of and primary reason for, the restrictive clauses in a policy is the protection of the insurer against risks materially different from those undertaken at the time of issuing the policy. To that end the insurer is entitled to insist on a continuance of the personal vigilance, possession, supervision, control, care, and moral responsibility in relation to the property stipulated in the contract. In this case the insured was an estate, and the contract must be presumed to have been made with reference to the usual changing conditions of property in the hands of an administrator, passing through probate. At the time of the fire, it was yet in his hands, passing through probate, and the legal title was in the estate, which yet had an insurable interest in excess of the loss. The legal title, possession, care, custody and moral and physical hazard were unchanged.''

The court held that because neither the moral or physical hazard of the risk was increased, the policy of insurance would not be forfeited. In the case before us there was a change of interest, including change of possession.

In *Excelsior Foundry Co.* v. *Western Assurance Co.,* 135 Mich. 467 (3 Ann. Cas. 707), the court had occasion to pass upon the question of whether a policy of insurance, containing terms regarding change of interest similar to that in the case before us, would be forfeited, because of a certain change of interest, without notice to the insurer. A fire insurance policy had been issued on factory buildings erected on land held by the insured under a part-paid contract from one Wheeler. Subsequently, the

insured contracted to sell the plant to Wheeler and reassign the contract. The contract was reassigned, half of the consideration paid to the insured and a bill of sale of the plant delivered to a third person, to be delivered to Wheeler upon full payment, it being agreed that title was not to pass until such payment. Before delivery of the bill of sale, a fire occurred. The court held because the contract for the premises upon which the insured buildings were located, had been reassigned to Wheeler by the insured after he had insured the buildings and because Wheeler had paid the insured $10,000 in cash, and had given a note for the balance of the purchase price, secured by a block of valuable stock, that a transaction of this nature constituted such a material change in the interest of the insured as to void the policy. The rule to be drawn from this case is that where there is material change in the interest of the insured, such a policy will be void.

In this case, defendants' agent did nothing by representation or conduct that would result in waiver of the conditions of the policy. There was a material change in interest and possession of the property insured without the written agreement or indorsement of defendants or its agent consenting thereto, as required by the contract of insurance. The policy, therefore, was void at the time the fire occurred. The determination of this question makes it unnecessary to discuss other matters raised on the appeal.

The judgment is affirmed, with costs to the defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, and NORTH, JJ., concurred. CHANDLER, J., did not sit.